256 F.3d 935 (9th Cir. 2001)
 UNITED STATES OF AMERICA, PLAINTIFF,
and
PYRAMID LAKE PAIUTE TRIBE OF INDIANS, PETITIONER-APPELLANT,
v.
ORR WATER DITCH COMPANY, ET AL., DEFENDANTS,
and
TOWN OF FERNLEY; TRUCKEE- CARSON IRRIGATION DISTRICT; THE STATE ENGINEER, DEFENDANTS-APPELLEES.
 TOWN OF FERNLEY; APPEAL OF STATE ENGINEER RULING NO. 4116
 
 UNITED STATES OF AMERICA, PLAINTIFF-APPELLANT,
 and
 PYRAMID LAKE PAIUTE TRIBE OF INDIANS, PETITIONER,
v.
ORR WATER DITCH COMPANY, ET AL., DEFENDANTS,
 and
 TOWN OF FERNLEY; TRUCKEE-CARSON IRRIGATION DISTRICT; THE STATE ENGINEER, DEFENDANTS-APPELLES.
 TOWN OF FERNLEY; Appeal of State Engineer Ruling No. 4116.
 Nos. 99-16812, 99-16817.
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted December 11, 2000.
Filed July 5, 2001
 Katherine J. Barton, U.S. Department of Justice, Washington, D.C., for plaintiff-appellant United States of America.
 Robert S. Pelcyger, Fredericks, Pelcyger & Hester, Louisville, Colorado, for petitioner-appellant Pyramid Lake Paiute Tribe of Indians.
 Ross E. de Lipkau, Marshall Hiss Cassas & de Lipkau, Reno, Nevada, for defendant-appellee Town of Fernley.
 Michael J. Van Zandt, McQuaid, Metzler, Bedford & Van Zandt, San Francisco, California, for defendant-appellee Truckee-Carson Irrigation District.
 David Creekman, Carson City, Nevada, for defendant- appellee The State Engineer.
 Appeal from the United States District Court for the District of Nevada; Lloyd D George, District Judge, Presiding. D.C. No CV-N-A-3-LDG.
 Before: Mary M. Schroeder, Chief Judge, John T. Noonan and William A. Fletcher, Circuit Judges.
 
 
 1
 Opinion by Judge William A. Fletcher; Dissent by Judge Noonan
 
 W. Fletcher, Circuit Judge
 
 2
 The town of Fernley, Nevada, has applied to the Nevada State Engineer to change the manner and place of use of rights to roughly 280 acre-feet of water from the federal Newlands Reclamation Project. The Pyramid Lake Paiute Tribe of Indians and the federal government oppose the proposed transfers, contending that the water rights at issue have been forfeited or abandoned under Nevada state law. The district court affirmed the decision of the Nevada State Engineer that none of the water rights had been forfeited or abandoned. We reverse and remand for further proceedings.
 
 I. Factual Background
 
 3
 The Newlands Reclamation Project ("the Project") diverts the flow of the Truckee and Carson rivers to supply the needs of water users in Nevada. The Project has two divisions, named after the two rivers. At Derby Dam, the Project diverts part of the flow of the Truckee River southward through the Truckee Canal to join the Carson River at Lahontan Reservoir. From Lahontan Reservoir, the augmented Carson flows east, where its water is distributed to users in and around the city of Fallon, in what is known as the "Carson Division" of the Project. The Project also diverts part of the water in the Truckee Canal before it reaches the Lahontan Reservoir. The water from this diversion is distributed to users in and around the town of Fernley, in what is known as the "Truckee Division." Water from the Truckee River that is not diverted through the Truckee Canal into either of the divisions flows north into Pyramid Lake. The federal government operates the Newlands Project, but water rights in the Project are held by individual landowners pursuant to contracts between the land-owners and the Department of the Interior. The nature and extent of those water rights are determined, in large part, by Nevada state law.
 
 
 4
 The town of Fernley seeks to satisfy its growing water needs by acquiring water rights in the Truckee Division of the Project. This water has historically been used for irrigation purposes, but Fernley would use it for municipal and industrial purposes instead.[1] Fernley filed an application with the Nevada State Engineer to change the manner and place of use of 26 separate water use permits it has acquired, totaling roughly 280 acre-feet of Project water. This is a relatively small transfer, but it raises questions common to many other transfers contemplated by Fernley.[2]
 
 
 5
 The Pyramid Lake Paiute Tribe of Indians ("the Tribe") resides on a half-million acre reservation in Nevada that surrounds Pyramid Lake, a body of water the Supreme Court has described as perhaps "the most beautiful desert lake in North America." Nevada v. United States, 463 U.S. 110, 114 (1983). Pyramid Lake once received the entire flow of the Truckee River, but it now receives only what remains after the river has been tapped by the Newlands Project. In years past, Project diversions have adversely affected the size and ecology of the lake, threatening several varieties of fish, one of which (the cui-ui) is an endangered species. If Fernley's transfer application is granted, its water rights will be exercised and the current flow of the Truckee River into Pyramid Lake will be diminished. See United States v. Alpine Land & Reservoir Co., 878 F.2d 1217, 1221 (9th Cir. 1989) (" Alpine II"). The Tribe opposes Fernley's application because its economy, culture, and heritage are linked to the size of the flow of the Truckee River and to the health of Pyramid Lake.
 
 
 6
 The Tribe entered a timely opposition to Fernley's proposed transfer, and the United States joined the Tribe in opposition to the transfer. See 1990 Settlement Act, P.L. 101-618, 104 Stat. 3289 §§ 202, 209 (assigning Secretary of Interior the duty to protect the Tribe and the resources of Pyramid Lake); Pyramid Lake Paiute Tribe of Indians v. Morton, 354 F. Supp. 252, 256 (D.D.C. 1973), rev'd on other grounds , 499 F.2d 1095 (D.C. Cir. 1974). The Tribe and the government contend that the water rights that Fernley seeks to transfer no longer exist because the prior holders of those rights failed to exercise them for an extended period of time. In water law parlance, they contend that the water rights have been"forfeited" under Nevada statutory law, or have been "abandoned" under Nevada common law.
 
 
 7
 The initial decisions on the proposed transfers were made by the Nevada State Engineer pursuant to his authority under Nev. Rev. Stat. §§ 533.345 and 533.370, and United States v. Alpine Land & Reservoir Co., 503 F. Supp. 877, 885 (D. Nev. 1980) ("Alpine Decree"), aff'd as modified, 697 F.2d 851, 857-58 (9th Cir. 1983) ("Alpine I"), cert. denied, 464 U.S. 863 (1983). The State Engineer approved the transfer of all but a few of the water rights at issue. He first entered factual findings that Fernley was the bona fide owner of the water rights and that the town had been paying the operation and maintenance fees for those rights. He then made a number of other legal and factual findings. We describe those that are relevant to this appeal.
 
 
 8
 First, the Engineer rejected the argument that some of the water rights at issue had been forfeited under Nev. Rev. Stat. sec. 533.060(2) (1997).[3] The Tribe and the government had agreed that Nevada law protected from forfeiture water rights that had been "vested," or for which appropriations had been "initiated," before the passage of the forfeiture statute on March 22, 1913. See Nev. Rev. Stat. sec. 533.085. But they contended that some of the water rights at issue were subject to forfeiture because the rights had not vested, and appropriations had not been initiated, before March 22, 1913. The Engineer disagreed, concluding that under Nevada's"relation back" doctrine, appropriations of all of the rights at issue were "initiated" within the meaning of Nev. Rev. Stat. sec. 533.085 in July 1902, when the United States government initiated the Newlands Project. The Engineer therefore ruled that all of the water rights at issue were exempt from forfeiture under Nev. Rev. Stat. sec. 533.085.
 
 
 9
 Second, the Engineer rejected arguments that non-forfeited water rights were abandoned under Nevada common law. He ruled that Nevada did not recognize a legal presumption in favor of abandonment upon a showing of prolonged non-use, and that in the absence of such a presumption the Tribe had produced "no evidence" to indicate that abandonment had occurred.
 
 
 10
 The Tribe and the government appealed the Engineer's rulings to federal district court in Nevada, pursuant to the procedure approved by this court in Alpine I. See 697 F.2d at 857-58; see also United States v. Orr Water Ditch Co., 914 F.2d 1302, 1308 (9th Cir. 1990). The district court affirmed and denied a later motion for reconsideration. The Tribe and the government appeal to this court. We reverse and remand.
 
 II. Legal Background
 
 11
 Water litigation is a weed that flowers in the arid West. The federal courts first considered water rights issues in the Newlands Project in 1913, in a quiet-title action instituted by the United States. Over thirty years after that suit was initiated, a Nevada district court finally adjudicated water rights in the Truckee Division of the Project. See United States v. Orr Water Ditch Co., In Equity, Docket No. A-3 (D. Nev. Sept. 4, 1944) ("Orr Ditch Decree"). Thirty-six years after that, we adjudicated water rights in the Carson Division. See Alpine Decree, 503 F. Supp. at 877, aff'd, Alpine I, 697 F.2d at 851.
 
 
 12
 Of particular relevance to this case is a series of decisions involving water rights in the Carson Division. Following the Alpine Decree and our affirmance of that decree in Alpine I, many water right holders in the Carson Division sought to transfer water rights that were appurtenant to other Project land to their own land. As in this case, the Tribe opposed many of the transfer applications on the grounds that the rights had been forfeited or abandoned. When the State Engineer ruled that Nevada's statutory forfeiture provision did not apply to the water rights at issue and that there was no evidence of abandonment, the Tribe appealed. Initially, a district court affirmed the Engineer on the ground that Nevada law did not apply at all, but in Alpine II we disagreed. We reversed and remanded to the district court for review of the Engineer's findings on forfeiture and abandonment based on state law. On remand, the district court affirmed the Engineer's findings. Once, again, the Tribe appealed to this court, and, in United States v. Alpine Land & Reservoir Co., 965 F.2d 731 (9th Cir. 1992), amended by United States v. Alpine Land & Reservoir Co., 983 F.2d 1487 (9th Cir. 1993) ("Alpine III"), we once again reversed.
 
 
 13
 On the question of forfeiture, we held that the Engineer had erred in determining that, because of the exemption created in Nev. Rev. Stat. sec. 533.085, Nevada's forfeiture statute did not apply to the water rights in question. The Engineer had written, "The existing Newlands water rights that are the subject of the change applications were vested in the name of the United States when Congress authorized Lahontan Dam in 1902." Id. at 1495. We disagreed, noting that "the individual rights at issue . . . did not vest in 1902 when the United States obtained Project-wide rights." Id. at 1496. We concluded that individual water rights were exempted from the Nevada forfeiture statute only if the rights were vested, or the appropriations had been initiated, prior to 1913: If the right vested before March 22, 1913, or if the appropriation of the right was initiated in accordance with the law in effect prior to that date, then it is not subject to possible forfeiture under NRS 533.060.
 
 
 14
 Id. We therefore remanded for an individualized determination, for each parcel at issue, of "whether and when the right vested, and under which law appropriation was initiated." Id; see also United States v. Alpine Land & Reservoir Co., 27 F. Supp. 2d 1230 (D. Nev. 1998) ("Alpine IV") (district court's opinion on remand). On the question of abandonment, we held that the State Engineer had abused his discretion by failing to conduct an individualized inquiry to determine whether each water right sought to be transferred had been abandoned by the transferor property owner. Alpine III, 983 F.2d at 1494. As of the time we write this opinion, the State Engineer has yet to make the findings required under Alpine III. Therefore, while our cases involving the Carson Division (in particular, Alpine III) set forth the legal rules for adjudicating questions of forfeiture and abandonment of water rights in the Newlands Project, this Truckee Division case presents the first time we have been asked to review the State Engineer's application of these rules.
 
 III. The Law of Forfeiture and Abandonment
 
 15
 Water rights can be lost in Nevada either through forfeiture or abandonment. In most cases, it is easier to establish forfeiture than abandonment because forfeiture requires only a showing of non-use for five successive years. Abandonment, on the other hand, is the "relinquishment of the right by the owner with the intention to forsake and desert it. " In re Manse Spring, 108 P.2d 311, 315 (Nev. 1940) (citation omitted). Abandonment therefore requires a showing of actual intent to abandon. Non-use can provide "some evidence" of intent, see In re Franktown Creek, 364 P.2d 1069, 1072 (Nev. 1961), but it is not by itself sufficient to establish abandonment. In the case now before us, the Tribe and the government argue that some of the water rights in question are subject to forfeiture. Fernley argues that none of the water rights are subject to forfeiture. The parties agree that all of the water rights are subject to abandonment.
 
 A. Forfeiture
 
 16
 Under Nevada law, a water right is forfeited if it is shown not to have been exercised for five successive years. See Nev. Rev. Stat. § 533.060. However, Nevada law specifies that the forfeiture statute does not apply to water rights that were vested or for which appropriations were initiated before that statute took effect, on March 22, 1913:
 
 
 17
 Nothing contained in this chapter [establishing the statutory rule of forfeiture] shall impair the vested right of any person to the use of water, nor shall the right of any person to take and use water be impaired or affected by any of the provisions of this chapter where appropriations have been initiated in accordance with law prior to March 22, 1913.
 
 
 18
 Nev. Rev. Stat. sec. 533.085(1). If a water right is exempted from the Nevada forfeiture statute, it may be lost only through abandonment.
 
 
 19
 We considered the relationship between Nev. Rev. Stat. sec. 533.060 and sec. 533.085 in our decision in Alpine III. In that case, the State Engineer had determined that the forfeiture statute did not apply to the water rights at issue because "[t]he existing Newlands water rights that are the subject of the change applications were vested in the name of the United States when Congress authorized Lahontan Dam in 1902." 983 F.2d at 1495. The Engineer assigned all Newlands Project water rights a single vesting date for purposes of Nev. Rev. Stat. sec. 533.085--the 1902 date on which Congress initiated the Newlands Project. We rejected this approach in Alpine III and instead held that a water right had to be vested, or that appropriation of that right had to have been initiated, for the particular parcel of land to which it was appurtenant for that right to be exempt from forfeiture under sec. 533.085. See 983 F.2d at 1495-97.
 
 
 20
 Given the purpose of sec. 533.085, this was a sensible construction of the terms "vested" and "initiated" as used in that statute. The passage of the Nevada forfeiture statute in 1913 made water rights more precarious. Prior to its passage, water rights could be lost only through abandonment; now they could also be lost through forfeiture. To the extent that a water right could be lost more easily after the passage of the forfeiture statute, one "stick" in the "bundle of sticks" that had previously comprised that water right had been taken away.
 
 
 21
 For water-right holders whose rights had vested by 1913, or who had already initiated appropriations of their rights by that date, the new forfeiture statute could work unfairly because these holders had obtained or initiated appropriations of their rights on the understanding that those rights would not be subject to forfeiture. Indeed, with respect to those individuals, the statute could be more than just unfair; it could even be unconstitutional, for its removal of one stick from the bundle of sticks comprising a water right could be seen as an unconstitutional taking of property. The Nevada legislature alleviated concerns about unfairness and unconstitutionality by exempting both categories of holders from forfeiture under sec. 533.060. If a holder either possessed a vested water right on March 13, 1913, or had initiated appropriation of a water right by that date, the right-holder was protected from forfeiture by § 533.085. In the jargon of modern takings law, if a water-right holder had an investment-backed expectation as of the effective date of the statute, that holder's water right was exempt from forfeiture.
 
 
 22
 Given the purpose of sec. 533.085, it does not make sense to read the term "initiated" to refer to 1902, the date the United States initiated the water rights for the entire Newlands Project. Such a reading would protect water-right holders who had done nothing at all to acquire water rights as of the date of the forfeiture statute. There was reason to protect individuals whose investment-backed expectations would be violated by sec. 533.060, and sec. 533.085 did so by exempting their rights from forfeiture. But there was no reason to protect individuals who began the process of acquiring water rights after the effective date of the statute, because they did so with notice that any water rights they acquired would be subject to forfeiture.
 
 
 23
 As we explained in Alpine III,
 
 
 24
 According to the Nevada Supreme Court, the Nevada legislature included the provision exempting pre-1913 rights from impairment "to refrain from infringing upon rights which had accrued at that time, so as to avoid any question of the constitutionality of the Act." Manse Spring, 108 P.2d at 315.
 
 
 25
 ***
 
 
 26
 The rights acquired by the farmers in the Project from the United States were more akin to newly appropriated water rights than to the rights such as those in Manse Spring that had remained appurtenant to a particular tract of land and had been passed with the land. In obtaining water rights from the United States, the Project farmers were really in the same position as farmers appropriating water from its source. Accordingly, with the purpose of the statute in mind, it would not make sense to grant to every farmer a Project water right with a 1902 vesting date regardless of when the farmer actually obtained the right to irrigate his land.
 
 
 27
 ***
 
 
 28
 If the right vested before March 22, 1913, or if the appropriation of the right was initiated in accordance with the law in effect prior to that date, then it is not subject to possible forfeiture under NRS 533.060.
 
 
 29
 Alpine III, 983 F.2d at 1496 (emphasis added).
 
 
 30
 We held in Alpine III that in order for a given water right to receive the protection of Nev. Rev. Stat. sec 533.085, that water right must have vested, or an individual landowner must have "initiated" appropriation of that right, before March 22, 1913. In other words, the landowner must have taken affirmative steps to appropriate water for his or her own use by that date. In practice, this means that the individual must have (at the very least) contracted with the federal government prior to that date for delivery of Project water. Accordingly, we hold that the State Engineer erred in concluding that, for purposes of sec. 533.085, all water rights in the Truckee Division were "initiated" when land for the Newlands Project was withdrawn from public entry by the federal government in 1902. We further hold that the district court made the same error when, in affirming the Engineer, it concluded that because each individual Project water right has a "priority date" of July 2, 1902, it was therefore initiated, within the meaning of sec. 533.085, on that same date.
 
 
 31
 We agree with the Engineer and the district court that the priority date for all of the rights at issue in this case is 1902. The Orr Ditch Decree, affirmed by the Supreme Court, established this priority date. See Nevada v. United States, 463 U.S. at 117. But our holding in Alpine III did not concern a priority date. Rather, it concerned the forfeiture exemption provided by sec. 533.085.
 
 
 32
 In Alpine III, we remanded the case for a determination of vesting and initiation dates for particular parcels. The district court to which we remanded in Alpine III understood our holding in the same way we understand it today, writing that Alpine III "drew a distinction between the rights obtained by the United States and the rights appurtenant to particular tracts of land" for purposes of Nev. Rev. Stat.sec. 533.085. Alpine IV, 27 F. Supp. 2d at 1240. The district court accordingly directed the Engineer to determine "when the individual landowner took the `first steps' to appropriate the water appurtenant to his land, and not [to] rely on the 1902 priority date." Id. at 1241. Failure to do so, the district court observed, would be an abuse of discretion. See id.
 
 
 33
 Our reading of Alpine III is reinforced by the history of that decision. After a petition for rehearing, the Alpine III panel modified its opinion. The original language of the Alpine III remand order appears at 965 F.2d 739:
 
 
 34
 On remand, in order to determine whether a water right may have been forfeited, it first must be determined whether when [sic] the right vested. Only if the right vested after March 22, 1913 would it be subject to possible forfeiture under NRS 533.060.
 
 
 35
 This language caused some concern to the appellees in that case, the State Engineer and the Truckee-Carson Irrigation District ("TCID"). They pointed out that Nev. Rev. Stat. § 533.085 protects not only the "vested right of any person to the use of water" but also "the right of any person to take and use water . . . where appropriations have been initiated in accordance with law prior to March 22, 1913." Nev. Rev. Stat. § 533.085 (emphasis added). TCID argued in its brief that "[t]he Court's focus on the vesting date of these water rights ignores the fact that the same protection afforded vested water rights was also extended to non-vested water rights in the Nevada Water Law of 1913." It then stated that there was "no question" that the water rights at issue were "initiated" prior to 1913. The State Engineer's brief argued that Alpine III had ignored the principle of "relation back" by separating "vesting date" from "priority date," and had erred in distinguishing the water rights acquired by the federal government from the Project farmers' water rights. Once the farmers received their land patents, the Engineer argued,"the Project farmers acquired the Government's interest in the water rights, and once the water was put to beneficial use, these rights dated back to 1902."
 
 
 36
 In response to the petition for rehearing, the Alpine III panel modified its opinion so that the final paragraph of Section IV now reads:
 
 
 37
 On remand, in order to determine whether a water right may have been forfeited, it first must be determined whether and when the right vested, and under which law appropriation was initiated. If the right vested before March 22, 1913 or if the appropriation of the right was initiated in accordance with the law in effect prior to that date, then it is not subject to possible forfeiture under NRS 533.060.[4]
 
 
 38
 The panel thus rejected the argument that all appropriations were initiated in 1902, and remanded for individual determinations.
 
 B. Abandonment
 
 39
 In addition to claiming that some of the water rights at issue in this case have been forfeited under Nevada statutory law, the Tribe also claims that some of them have been abandoned under Nevada common law. Under Nevada law, abandonment is "the relinquishment of the right by the owner with the intention to forsake and desert it." Manse Spring, 108 P.2d at 315. Abandonment thus requires a showing of subjective intent on the part of the holder of a water right to give up that right.
 
 
 40
 Subjective intent is difficult to prove by direct evidence. Few water-right holders say in front of witnesses,"I intend to abandon my water rights." Therefore, indirect and circumstantial evidence must almost always be used to show abandonment. Many states have adopted legal presumptions designed to ease the burden upon the challenger and to increase the likelihood that water will be put to beneficial use. In particular, nearly all western states presume an intent to abandon upon a showing of a prolonged period of non-use. See, e.g., Okanogan Wilderness League, Inc., v. Town of Twisp, 947 P.2d 732, 739 (Wash. 1997); In re Clark Fork Drainage Area, 908 P.2d 1353, 1356 (Mont. 1995); Consolidated Home Supply Ditch and Reservoir Co. v. Town of Berthoud, 896 P.2d 260, 266 (Colo. 1995); State ex rel. Reynolds v. South Springs Co., 452 P.2d 478, 482-83 (N.M. 1969); Yentzer v. Hemenway, 440 P.2d 7, 13 (Wyo. 1968); Utt v. Frey, 39 P. 807, 809 (Cal. 1895).
 
 
 41
 The State Engineer ruled in this case, however, that Nevada does not include such a presumption in its common law of abandonment, and that the Tribe could not therefore shift the burden of proof to require Fernley to show affirmatively that there was no intent to abandon merely by showing a prolonged period of non-use. The district court agreed. While we consider the State Engineer's interpretations of Nevada statutes "persuasive," they are not controlling. We review the district court's conclusions of law de novo. See Alpine II, 878 F.2d at 1222; Town of Eureka v. State Engineer , 826 P.2d 948, 949 (Nev. 1992). On de novo review, we agree with the district court.
 
 
 42
 Under Nevada case law, a prolonged period of non-use may be taken into consideration in determining whether a water right has been abandoned, see Manse Spring , 108 P.2d at 316, and non-use "may inferentially be some evidence of an intent to abandon." Franktown Creek, 364 P.2d at 1072. But Nevada law goes no further than an inference. It is only a matter of degree, but a legal presumption is stronger than an inference. None of the cases cited by Fernley explicitly disclaims a presumption, but neither the Tribe nor the government cites any Nevada decision showing that Nevada law has changed since our decision in Alpine III, where we stated "[t]hough the longer the period of nonuse, the greater the likelihood of abandonment, we find no support for a rebuttable presumption under Nevada law." 983 F.2d at 1494 n.8; see also Alpine IV, 27 F. Supp. 2d at 1242. We acknowledge that Nevada appears to be the only western state that maintains this position, but in our federal system it is entitled to do so.[5]
 
 
 43
 On appeal to this court, the Tribe asserts that the State Engineer was wrong to consider payment of operation and maintenance fees as sufficient evidence to support a finding that the particular water rights had not been abandoned. According to the Nevada Supreme Court, abandonment is to be determined "from all the surrounding circumstances," and those circumstances certainly include the payment of assessments and taxes. Revert v. Ray, 603 P.2d 262, 264 (Nev. 1979); see also Alpine IV, 27 F. Supp. 2d at 1243. But payment of fees is not the only factor to be considered when there is conflicting evidence on the issue of abandonment. Other important circumstances to be considered include non-use of the water right, see Franktown Creek, 364 P.2d at 1072; Manse Spring, 108 P.2d at 316, and the construction of structures incompatible with irrigation. See Nev. Rev. Stat. § 533.045 ("When the necessity for the use of water does not exist, the right to divert it ceases, and no person shall be permitted to divert or use the waters of this state except at such times as the water is required for a beneficial purpose."). In order to guide the district court and the State Engineer in this and other abandonment proceedings, we endorse the district court's statement in Alpine IV:
 
 
 44
 Where there is evidence of both a substantial period of nonuse, combined with evidence of an improvement which is inconsistent with irrigation, the payment of taxes or assessments, alone, will not defeat a claim of abandonment. If, however, there is only evidence of nonuse, combined with the finding of a payment of taxes or assessments, the court concludes that the Tribe has failed to provide clear and convincing evidence of abandonment.
 
 
 45
 27 F. Supp. 2d at 1245.
 
 
 46
 IV. Application of the Law of Forfeiture and Abandonment
 
 A. Forfeiture
 
 47
 As explained above, the State Engineer ruled that, for purposes of Nev. Rev. Stat. sec. 533.085, the water rights at issue all have an initiation date of 1902. He therefore found that none of the water rights is subject to forfeiture under sec. 533.060. The Engineer also made alternate findings based on the assumption that the water rights were not initiated in 1902 and were therefore subject to forfeiture.
 
 
 48
 In his alternative findings, the Engineer assumed that the water rights appurtenant to parcels 1, 3, 8, 9, 10, 16, 19, and 20 were not protected from forfeiture. Accordingly, the Engineer examined evidence introduced by the Tribe to determine if any of these eight water rights were not exercised during "any 5 successive years." Nev.Rev.Stat. sec. 533.060. The Engineer evaluated the evidence presented for these parcels and concluded that only one of the appurtenant water rights had been forfeited. As to the others, he found that the Tribe had failed to prove the statutory period of non-use"by clear and convincing evidence." Town of Eureka, 826 P.2d at 952.
 
 
 49
 The district court did not review the Engineer's alternative findings with respect to forfeiture because it agreed with the Engineer that the only applicable legal theory was abandonment. We are reluctant to review the Engineer's findings without allowing the district court to do so first. Even if we were willing to conduct such a review, however, we could not do so on the record before us. While the record includes the Engineer's ruling, it does not contain the evidence introduced in the proceeding before the Engineer. We therefore remand to the district court. On remand, the district court will have the opportunity to review the Engineer's forfeiture findings on a parcel-by-parcel basis, and to incorporate into the district court record the evidence submitted to the Engineer relevant to those findings.
 
 
 50
 Despite the limitations imposed by the current state of the record, it may be appropriate for us to comment on what we do have before us. We are concerned that the Engineer may have misunderstood the "clear and convincing evidence" standard necessary to establish forfeiture. For example, we note his ruling that the Tribe failed to prove by clear and convincing evidence that the water rights appurtenant to Parcel 1 have been forfeited. The Engineer acknowledged that the Tribe introduced evidence that the parcel had been described as "bare land, prepared for cultivation" (based on interpretations of aerial photographs) in 1949, 1973, and 1977; simply as "bare land" (based on an infrared aerial photograph) in 1984; and as "bare land, buildings, and roads" in 1991. Another aerial photograph taken in 1993 showed no evidence of irrigation. Testimonial evidence indicated that the farm located on Parcel 1 was "in disrepair" and was "not organized or prepared for cultivation." The Tribe also introduced a map, prepared by the Bureau of Reclamation, which showed that Parcel 1 had not been irrigated in any of the years between 1984 and 1989.
 
 
 51
 The Engineer's ruling does not refer to any contrary evidence, yet he concluded that the Tribe had failed to establish by clear and convincing evidence that the water rights appurtenant to Parcel 1 had been forfeited. In support of his conclusion, he wrote that there was no evidence of non-use in the years between the aerial photographs, that the Bureau map could be unreliable, that the aerial photographs may have been wrongly interpreted, and that the on-the-ground surveys were not performed frequently enough. In so concluding, the Engineer does not appear to have required only clear and convincing evidence. See Albert H. Wohlers & Co. v. Bartgis, 969 P.2d 949, 957 n.4 (Nev. 1999) (approving jury instruction describing clear and convincing evidence as "evidence which is beyond a mere preponderance of the evidence"); accord Topaz Mutual Co., Inc. v. Marsh, 839 P.2d 606, 609 (Nev. 1992). He appears to have demanded proof beyond a reasonable doubt, and perhaps even more than that. Our review of the Engineer's forfeiture rulings on other parcels suggests that his evaluation of the Tribe's evidence with respect to those parcels may also have gone beyond a requirement of clear and convincing evidence.
 
 B. Abandonment
 
 52
 The Tribe argued before the Engineer that some of the water rights in question were abandoned under Nevada common law. As we have noted above, the Engineer ruled correctly that Nevada law does not include a legal presumption in favor of abandonment based on a showing of prolonged non-use. He then stated, with respect to water rights subject to abandonment:
 
 
 53
 Permanent improvements, such as farm buildings, roads and canals, have been constructed on some of the parcels. The Tribe feels that prolonged non-use coupled with the existence of permanent improvements establishes abandonment of the water rights. However, the Tribe presented no evidence or testimony relating to the intent to abandon these water rights.
 
 
 54
 The Engineer noted that the Town of Fernley had"kept the rights in good standing" by paying the applicable fees for water delivery, and that "no evidence in the record indicat[es] that any previous owner failed to pay the assessments or in any way displayed an intent to abandon or forsake these water rights." He then found that none of the water rights in question had been abandoned.
 
 
 55
 In appealing the Engineer's findings, the Tribe and the federal government argued that he failed to consider evidence of abandonment they had introduced. In particular, they argued that evidence of prolonged non-irrigation combined with evidence of improvements inconsistent with irrigation needs (for example, buildings) were sufficient to show that water rights appurtenant to a given parcel of land had been abandoned. The district court rejected their arguments, but did not review the evidence on a parcel-by-parcel basis in its order, stating only that the Engineer "did not ignore the Tribe's evidence."
 
 
 56
 The State Engineer's findings concerning abandonment are reviewed in federal court to determine whether they are supported by "substantial evidence." See Revert v. Ray, 603 P.2d at 264. We cannot determine from its order whether the district court reviewed the Engineer's findings for conformity with Nevada abandonment law, as articulated by Nevada statutes and case law and by the district court in Alpine IV. We are also unable to review those findings because the evidence introduced in the proceeding before the Engineer has not been incorporated into the district court record that is now before us. We therefore remand for further proceedings. On remand the district court will have the opportunity to review, on a parcel-by-parcel basis, the evidence before the Engineer to determine whether it supports his findings on abandonment, and to include in the record the relevant evidence presented to the Engineer.
 
 
 57
 As with his forfeiture findings, we think it may be appropriate to comment briefly on the Engineer's abandonment findings. From his written findings, it appears that the Engineer may have misapplied Nevada's clear and convincing evidence standard in finding no abandonment, just as he appears to have done in finding no forfeiture. For example, the Tribe and federal government introduced a substantial amount of circumstantial evidence showing that the water rights appurtenant to Parcel 10 had been abandoned. This evidence included aerial photographs taken in 1949, 1973 and 1977 showing that Parcel 10 was "bare land"; descriptions of the land in 1984 and 1991 indicating that it was not being used for agriculture; and a photograph taken in 1993 showing that the land had been converted to a residential subdivision. The Engineer nevertheless ruled that there was no "clear and convincing evidence" that the water rights appurtenant to Parcel 10 had been abandoned, even though there was no contrary evidence to show that those rights had ever been exercised. As with the Engineer's findings with respect to forfeiture, these findings appear to rest on a standard of proof higher than"clear and convincing evidence."
 
 Conclusion
 
 58
 We reverse the decision of the district court and remand for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Congress authorized municipal use of Project waters in the Truckee-Carson-Pyramid Lake Water Rights Settlement Act. Pub. L. No. 101-618 § 209(a)(1), 104 Stat. 3289 (1990).
 
 
 [2]
 We note that Nevada has recently revised Nev. Rev. Stat. § 533.060 and Nev. Rev. Stat. § 533.037, pertaining to forfeiture and abandonment. These revisions, however, do not affect this case because they do not apply to water rights that have been challenged in a legal or administrative proceeding pending on or before April 1, 1999. Moreover, neither statute "constitute[s] a legislative declaration that the law to be applied in any such pending proceeding is different from or the same as set forth in this act." See Section 7 of ch. 15, Statutes of Nev. 1999, at 2364.
 
 
 [3]
 For ease of reference in this opinion, we will refer to the version of Nev. Rev. Stat. § 533.060(2) in effect before the 1999 amendments to that statute without specifically noting that we are referring to the pre-1999 version. The statute, as it existed before 1999, provides: Except as otherwise provided . . . if the owner or owners of any such ditch, canal, reservoir, or any other means of diverting any of the public water fail to use the water therefrom or thereby for beneficial purposes for which the right of use exists during any 5 successive years, the right to so use shall be deemed as having been abandoned, and any such owner or owners thereupon forfeit all water rights, easements and privileges appurtenant thereto theretofore acquired, and all the water so formerly appropriated by such owner or owners and their predecessors in interest may be again appropriated for beneficial use the same as if such ditch, canal, reservoir or other means of diversion had never been constructed, and any qualified person may appropriate any such water for beneficial use.
 
 
 [4]
 The underlined portions of the paragraph were added or altered in the amended version of Alpine III.
 
 
 [5]
 Nevada has recently reaffirmed its commitment to a limited view of the law of abandonment. As amended in 1999, Nev. Rev. Stat. sec. 533.060(4) now states (emphasis added): In a determination of whether a right to use surface water has been abandoned, a presumption that the right to use the surface water has not been abandoned is created upon the submission of records, photographs, receipts, contracts, affidavits or any other proof of the occurrence of any of the following events or actions within a 10-year period immediately preceding any claim that the right to use the water has been abandoned: (a) The delivery of water; (b) The payment of any costs of maintenance and other operational costs incurred in delivering the water; (c) The payment of any costs for capital improvements, including works of diversion and irrigation; or (d) The actual performance of maintenance related to the delivery of the water.
 
 
 NOONAN, Circuit Judge, dissenting:
 
 59
 In 1902, the United States initiated the appropriation of the water rights here in dispute by the enactment of the Reclamation Act. See Nevada v. United States, 463 U.S. 110, 115-117 (1983). In so doing, the United States acted as trustee on behalf of the later individual owners of land within the Reclamation Project. Id. at 126, 103 S.Ct.2906. These water rights were consequently not subject to forfeiture and can now be transferred as the State Engineer and the district court ruled. In reaching the result it does, the majority silently but effectively departs from what the Supreme Court of the United States has already determined.
 
 
 60
 There cannot be any argument that when the United States began the Newlands Reclamation Project in 1902, it initiated the appropriation of the relevant water rights. Nothing prior to the enactment of the 1902 statute initiated the appropriation. Anything after 1902 merely carried out what had begun in 1902. This year was accordingly the priority date for ownership of the water rights, and the Reclamation Act was the first step in establishing beneficial ownership of the water for the individual landowners. Their rights relate back"to the time when the first step was taken to secure [them]." Ophir Mining Co. v. Carpenter, 4 Nev. 534, 543-44 (1869). The water rights are not forfeitable "where the appropriations of the right have been initiated in accordance with law prior to March 22, 1913." Nev. Rev. Stat. sec. 533.085.
 
 
 61
 Why is it that the majority does not reach this conclusion? First, because it misinterprets Alpine III. That case was about vesting; this court reversed the State Engineers's erroneous determination that water rights had vested in 1902. Alpine III, 965 F.2d 731, 738 (9th Cir. 1992). When it was brought to the court's attention that the court had said nothing about the initiation of appropriation of rights (an issue not before it), the court amended its disposition to remand the question of initiation. Alpine III, as amended, 983 F.2d 1487, 1496 (9th Cir. 1993).
 
 
 62
 The majority engages in the speculation that the purpose of the Nevada anti-forfeiture statute was to exempt"investment --backed expectations." Nothing in the language of the statute evinces this purpose. Where initiation of appropriation is begun there is no investment. There is merely an assertion of title. As the anti-forfeiture statute protects both vested rights and the first tentative step to vesting, there is no reason to attribute to the statute a purpose to protect investment.
 
 
 63
 The majority admits that in 1902 "the United States initiated the water rights for the entire Newlands Project." The majority's second error is implicitly to suppose that the Nevada legislature used "initiation of appropriation" to mean something different from the first step in the process of acquiring a water right. It makes perfect sense for the Nevada legislation to protect the Nevada individuals for whom the United States acted. It makes no sense to suppose with the majority that initiation of appropriation means one thing for purposes of priority and a very different thing for purposes of protection from forfeiture under sec. 533.085.
 
 
 64
 I concur with the court in its ruling on abandonment. I believe that its ruling on forfeiture misinterprets Alpine III, Nevada law, and what is at least implicit in Nevada v. United States, supra