**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

PYRAMID LAKE PAIUTE TRIBE OF
INDIANS,
                    *Plaintiff-Appellant,*

                    and

CITY OF FERNLEY,
                              *Petitioner,*

                    v.

ALPINE LAND & RESERVOIR
COMPANY, a corporation; et al.,
                              *Defendant,*

                    and

NEVADA STATE ENGINEER; WATER
TRANSFER APPLICATION NOS. 49999
(WORKMAN), 51051 (HARRIMAN),
51608 (DEBRAGA) AND 52843
(INGLIS); WATER TRANSFER
APPLICATION NOS. 50008
(RAMBLING RIVER RANCHES/FREY),
51043 (STIX) AND 51237 (WOLF);
WATER TRANSFER APPLICATION NO.
51734 (FORMERLY BRIGHT, NOW
HANEVA); WATER TRANSFER
APPLICATION 52335 (PONTE);
WATER TRANSFER APPLICATION NO.
53910 (FORMERLY THOMAS, NOW
UNITED STATES),
          *Respondents-Appellees.*

No. 06-17375

D.C. No.
CV-73-00184-RCJ

OPINION

16065

Appeal from the United States District Court
for the District of Nevada
Robert C. Jones, District Judge, Presiding

Argued and Submitted
November 7, 2007—San Francisco, California

Filed December 7, 2007

Before: John T. Noonan, Ferdinand F. Fernandez and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Fernandez

## COUNSEL

Stephanie Zehren-Thomas, Hester & Zehren, LLC, Louisville, Colorado; Robert S. Pelcyger, Boulder, Colorado, for the appellant.

Michael L. Wolz, Senior Deputy Attorney General, Reno, Nevada, for appellee Nevada State Engineer; Craig A. Pridgen and Nathan A. Metcalf, McQuaid Bedford & Van Zandt, LLP, San Francisco, California, for appellees DeBraga, Workman, Harriman and Inglis; Colm Moore and Laura A. Schroeder, Schroeder Law Offices, P.C., Portland, Oregon, for appellees Rambling River Ranches, Dave Stix and Howard Wolf; Katherine J. Barton and William Lazarus, United States Department of Justice, Environment & Natural Resources Div., Washington, D.C., for appellee United States.

## OPINION

FERNANDEZ, Circuit Judge:

Pyramid Lake Paiute Tribe of Indians (Pyramid) appeals the district court's order affirming the decision of the Nevada State Engineer which granted the transfer of water rights from the parcels of property to which they were then appurtenant to new parcels. All of the water rights are within the boundaries of the Newlands Reclamation Project.[1] Pyramid asserts that the rights could not be transferred because they had already been abandoned or forfeited within the meaning of the law of the State of Nevada. We affirm in part, reverse in part, and remand in part.

## BACKGROUND

We will be brief in setting out the background of this case because similar disputes have been before us many times in the past and we have extensively recounted the relevant history in our resolution of those disputes.[2] The Orr Ditch Decree[3] was involved in certain of the cases and the Alpine Decree[4]

---

[1]In the Reclamation Act of 1902, 32 Stat. 388, Congress withdrew about 250,000 acres of land in Nevada from public use, which was then irrigated with water from the Truckee River and the Carson River. Those actions created the Project.

[2]As relevant here, we have opined on the issues and set forth substantial comments regarding their history in the following cases: *United States v. Alpine Land & Reservoir Co.*, 340 F.3d 903 (9th Cir. 2003) ("*Alpine VI*"); *United States v. Alpine Land & Reservoir Co.*, 291 F.3d 1062 (9th Cir. 2002) ("*Alpine V*"); *United States v. Orr Water Ditch Co.*, 256 F.3d 935 (9th Cir. 2001) ("*Orr Ditch*"); *United States v. Alpine Land & Reservoir Co.*, 878 F.2d 1217 (9th Cir. 1989) ("*Alpine II*").

[3]In 1913, the United States initiated litigation for the purpose of settling competing claims to water of the Truckee River. That resulted in the Orr Ditch Decree. *See Orr Ditch*, 256 F.3d at 940.

[4]The Alpine Decree resulted from a quiet title action brought by the United States to adjudicate competing claims to the waters of the Carson River. *See United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851, 852-53 (9th Cir. 1983) ("*Alpine I*").

was involved in others, but the basic principles we will apply do not differ from decree to decree. At issue here are challenged transfers of water rights within the Newlands Reclamation Project. As relevant here, those rights are governed by the Orr Ditch Decree. Pyramid challenges the State Engineer's approval of ten of the transfer applications. Pyramid asserts that if, as it believes, the water rights in question were abandoned or forfeited, the water itself will remain in the Truckee River. It will then flow into and benefit the ecology of Pyramid Lake, which is located within the Pyramid Lake Indian Reservation.

The most recent activities, which have brought this appeal to us, can be said to stem from the district court's order of February 25, 2004; in response to our decisions in *Alpine V* and *Alpine VI*, the district court remanded certain then-pending transfer applications to the State Engineer for further consideration. The State Engineer then granted certain transfer applications, while denying others. Ten of the grants are contested at this time. Review of those grants was sought before the district court; it concluded that the State Engineer's findings were supported by substantial evidence and that his conclusions of law were consistent with our prior decisions.

Pyramid appeals the approval of the ten applications in question and argues that because of errors of law or erroneous findings of fact, some of the water rights in the applications should have been deemed abandoned or forfeited.

## JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction to review the decisions of the State Engineer. *See United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1011 (9th Cir. 1999). We have jurisdiction pursuant to 28 U.S.C. § 1291.

Our standard of review relates to the fact that the water rights law of the State of Nevada controls both the process

and the substance of the issues before us. *See Alpine II*, 878 F.2d at 1223 (" 'Fundamental principles of federalism require the national government to consult state processes and weigh state substantive law in shaping and defining a federal water policy.' "); *Alpine I*, 697 F.2d at 858 ("[S]tate law will control the distribution of water rights to the extent that there is no preempting federal directive."). Because of that, in accordance with Nevada law, applications to transfer water rights are first directed to the State Engineer. *See Alpine I*, 697 F.2d at 858. Moreover, the State Engineer's decisions " 'shall be prima facie correct, and the burden of proof shall be upon the party challenging the Engineer's decision.' " *Alpine V*, 291 F.3d at 1071. We review the State Engineer's legal interpretations de novo. *See Town of Eureka v. State Engineer*, 108 Nev. 163, 165, 826 P.2d 948, 949 (1992) (per curiam). We uphold the State Engineer's factual determinations if they are supported by substantial evidence. *Alpine V*, 291 F.3d at 1071.

## DISCUSSION

We have previously explicated the law in this area, and have sometimes felt the need to resolve conflicts or anomalies that appeared to be developing in our many pronouncements. Simply put, for the most part the questions now placed before us do not raise new legal issues. We will avoid undue commentary, which risks the interjection of inconsistencies. We will not replough that ground, but will, instead, set forth what we take to be the results of our prior decisions. We will proceed in that fashion rather than risk injuring the legal plants that we have heretofore nurtured. Of course, when a new seedling is presented to us, we will examine it and then plant it, if that seems appropriate.

What we have applied in the past, and must apply now, is our interpretation of the law of the State of Nevada. In doing so, we have never abandoned the overarching principle that Nevada law does not presume abandonment of a water right

from nonuse alone, and that claims of abandonment must be decided after consideration of all of the surrounding circumstances. *See Alpine VI*, 340 F.3d at 916. That said, we have developed rules for considering questions of abandonment and forfeiture.

A.  *Abandonment*

We will apply the following rules regarding abandonment (the first three numbered items have been developed in our past cases and we will add the fourth for the reasons outlined in part C(1) of this opinion):

> Where some evidence of abandonment[5] has been presented by the contesting party, the transfer applicant must present evidence that:
>
>> (1)  In fact, the water was beneficially used on the parcel to which the rights were attached; or
>>
>> (2)  There was no intent to abandon because (a) There has been continuous use of the water on another parcel, and (b) The applicant presented evidence of an unsuccessful attempt to transfer the water rights or at least inquired about the possibility of the transfer and was told by the government or TCID[6] that such a transfer was not permitted (in other words, the transfer was thwarted by one of those entities).[7] *See Alpine VI*, 340 F.3d at 917; or

---

[5]At the very least, a showing of some evidence of abandonment requires evidence of what the State Engineer determines to be a substantial period of nonuse on the parcel to which the rights were attached, but mere nonuse on that parcel is not enough to demonstrate abandonment. *See Alpine V*, 291 F.3d at 1072; *Orr Ditch*, 256 F.3d at 945-46.

[6]TCID is the Truckee Carson Irrigation District.

[7]In *Alpine VI*, we did not specifically use the word "thwart" in describing the criteria to demonstrate a lack of intent to abandon although that

(3) There was no intent to abandon because (a) The taxes and assessments were paid during the period of nonuse, and (b) There were no improvements inconsistent with irrigation on the land to which the rights were attached. *See Orr Ditch*, 256 F.3d at 946; or

(4) There was no intent to abandon because (a) The previous owner actually sold the water rights in question before an abandonment would otherwise be found, and (b) The new owner presented evidence of a lack of intent to abandon the water rights.

Finally, taking all of the evidence from the contesting party and the transfer applicant, the State Engineer must determine whether the water rights were abandoned. The contesting party, however, bears the burden to establish abandonment by clear and convincing evidence, which is that party's burden of persuasion. *See Alpine VI*, 340 F.3d at 921-22.

B.   *Forfeiture*

We will apply the following rules regarding forfeiture:[8]

Where it appears that the water rights are subject to forfeiture,[9] equitable relief may be granted if:

---

word was used in the area of forfeiture. However, the word "thwart" captures our intent.

[8]Forfeiture does not apply to water rights "that were vested or for which appropriations were initiated before . . . March 22, 1913." *Orr Ditch*, 256 F.3d at 941-42.

[9]Nonuse for "any 5 successive years" results in forfeiture. Nev. Rev. Stat. § 533.060 (1987).

(1)   Steps were taken to transfer those rights during the period of nonuse that led to the forfeiture. *See Alpine VI*, 340 F.3d at 914; *Alpine V*, 291 F.3d at 1078; and

(2)   The applicant presented evidence that the attempt was unsuccessful or at least that upon inquiry about the possibility of a transfer the applicant was told by the government or TCID that such a transfer was not permitted (in other words, the transfer was thwarted by the governmental entity). *Alpine V*, 291 F.3d at 1078; *see also Alpine VI*, 340 F.3d at 914; and

(3)   The balance of hardships favors the applicant. Where there is no increased diversion of water from the river, the balance will likely favor the applicant. *See Alpine VI*, 340 F.3d at 915; *Alpine V*, 291 F.3d at 1078 n.21. Otherwise, the decision would amount to a collateral attack on the Orr Ditch Decree itself. *See Alpine II*, 878 F.2d at 1224.

### C.   *Praxis*

With the above principles in hand, it is time to turn to consideration of the applications before us.

### (1)   *Application No. 49999 (Workman)*

**[1]** The State Engineer determined that as to Parcel 3 there was no abandonment because the fact that a sale of the water rights was made showed lack of intent to abandon, even though (a) the water was not put to a beneficial use for six years, (b) there was a use of the parcel inconsistent with irri-

gation, and (c) no thwarted attempt to transfer was made. Pyramid attacks that determination in a number of ways.

First, Pyramid says that once a substantial period of nonuse is shown, there must always be a thwarted attempt to transfer. That, as our statement of the law shows, is not the case.[10]

**[2]** However, Pyramid's assertion that a mere sale is not enough is more to the purpose. Our prior decisions have not spoken to a sale alone, but as our description of the law indicates, they have recognized flexibility, while not allowing for infinite flexibility. For example, in *Alpine VI*, 340 F.3d at 916-17, we recognized the flexibility requirement, but were quite specific about what would, or would not, suffice to avoid an abandonment finding on the facts presented. In light of that, we are constrained to hold that a mere sale *after* an abandonment would otherwise be found would not, itself, suffice to show a lack of intent to abandon. However, the situation is quite different if the State Engineer determines that there was a sale by the then owner of the rights before an actual abandonment occurred, and that the new owner presented evidence of a lack of intent to abandon within the meaning of the rules we have previously adopted.[11] This formulation avoids a rule that would eliminate all of the other considerations that we have so painstakingly developed in our cases, while recognizing the fact that a sale of the rights by the then owner is the very antithesis of intent to abandon.

**[3]** In the matter at hand, it is clear that the State Engineer found that a sale by the prior owner took place before it could be said that he had abandoned the water rights, and, clearly, the buyer's speedy transfer request showed that he did not intend to abandon either.

---

[10]*See* paragraph A, *supra* pp. 16073-74.

[11]*See* paragraph A(4), *supra* p. 16074.

**[4]** Thus, we will not set aside the determination regarding this application.

(2)   *Application No. 52335 (Ponte)*

**[5]** The State Engineer determined that while there had been a substantial period of nonuse as to certain, but not all, of the parcels involved in this application, there had been continuous use of the water itself and an attempt to transfer the water rights that was thwarted. We are unable to say that the State Engineer was not supported by substantial evidence. *See Alpine V*, 291 F.3d at 1071; *see also State Engineer v. Morris*, 107 Nev. 699, 701, 819 P.2d 203, 205 (1991) (per curiam) (holding that substantial evidence is the proper standard).

Pyramid contends that the transfer attempt came before the period of nonuse, but we have never held that a water right is abandoned where the attempt precedes the period of nonuse, nor do we see a reason to impose that rigid rule upon a decision as amorphous as the intent to abandon inquiry.[12]

Pyramid then argues that at a status conference a prior district judge opined on the specificity of the evidence that was required before the State Engineer could rule in favor of an applicant. Pyramid asserts that if that level was not reached, neither the State Engineer, nor a later district judge could rule in favor of the applicant. However, those thoughts were not incorporated into the order remanding the matter to the State Engineer. That being so, the district court's comments based upon what it gleaned from our decisions did not preclude its later appraisal of the State Engineer's actual decision on remand. *Cf. United States v. Smith*, 389 F.3d 944, 948-50 (9th Cir. 2004) (per curiam) (holding judge can revisit earlier orders); *City of Los Angeles v. Santa Monica Baykeeper*, 254

---

[12]We have applied a more rigid rule in the area of forfeiture, which is an inherently more rigid area within water law. *See, e.g.*, *Alpine VI*, 340 F.3d at 914; *Alpine V*, 291 F.3d at 1078.

F.3d 882, 888-89 (9th Cir. 2001) (same). Rather, the question was whether the record presented to the State Engineer did suffice to support his decision.

**[6]** Thus, we will not set aside the determination regarding this application.

(3)   *Application No. 50008 (Rambling River Ranches)*

**[]** The State Engineer determined that the water rights involved in this application were neither abandoned nor forfeited, although there had been a substantial period of nonuse of the water rights on the parcels to which they were appurtenant. That period was thirty-eight years as to Parcels 1, 2, 3, 5, 6, 7, 8, and 9; it was twenty-four years as to Parcels 11 and 12; and it was forty years as to Parcel 13. Five of the parcels (1, 2, 3, 5, and 6) had uses consistent with irrigation; three (7, 8, and 9) had uses partially inconsistent with irrigation; and three (11, 12, and 13) had uses entirely inconsistent with irrigation.

**[8]** Nevertheless, all of the water itself had been continuously used and all taxes and assessments had been paid. That alone validated the State Engineer's decision regarding abandonment as to Parcels 1, 2, 3, 5, and 6.[13]

**[9]** Moreover, as to all of the involved parcels, the State Engineer also determined that time and time again the applicant had made attempts to transfer the rights and was thwarted at every turn by the government or by TCID.[14] We cannot say that determination was devoid of substantial evidence. Therefore, none of the water rights were abandoned.

**[10]** The State Engineer did find that portions of Parcels 8 and 9 and all of Parcels 2, 11, and 12 were subject to forfei-

---

[13]*See* paragraph A(3), *supra* p. 16074.

[14]*See* paragraph A(2), *supra* pp. 16073.

ture. He then went directly to equitable balancing.[15] He decided that there would be no new diversions of water from Pyramid Lake because the water itself had been used continuously and, at any rate, the amount involved would be of infinitesimal value to the lake. As a result, he determined that there were no forfeitures.

**[11]** However, as Pyramid points out, that decision overlooks part of the necessary test, *viz* the need for a thwarted attempt during the forfeiture period.[16] As it is, water rights on Parcel 2 and parts of Parcel 8 and 9 had not been used on those parcels for a period of thirty-eight years, that is, since 1950. The State Engineer found multiple attempts to make transfers during the 1930's, the 1940's, the 1960's, and the 1970's, but did not find any attempts during the 1950's. Thus, a period of five years passed without an attempt to transfer the water rights and, perforce, the rights on those parcels were forfeited.

**[12]** The period of nonuse on Parcels 11 and 12 had been a mere twenty-four years (in other words, the nonuse began in 1964). That makes the issue much closer. Under Nevada law, as it stood then, "any successive 5 years" was sufficient to result in a forfeiture. Nev. Rev. Stat. § 533.060 (1987). From the State Engineer's findings, it is not possible to determine whether a successive five-year period passed without a thwarted transfer attempt during that period.[17]

**[13]** Thus, we reverse the State Engineer's determination regarding forfeiture of the rights on Parcel 2 and the relevant portions of Parcels 8 and 9, and set aside and remand this application for further development of the record regarding Parcels 11 and 12.

---

[15]That is one element. *See* paragraph B(3), *supra* p. 16075.

[16]*See* paragraphs B(1) & (2), *supra* p. 16075.

[17]*Id.*

(4)   *Application No. 51043 (Stix)*

**[14]** The State Engineer determined that there was a sub-stantial period of nonuse of the water rights appurtenant to the parcels in question as far as the parcels themselves were con-cerned. However, the use of the parcels was not inconsistent with irrigation and the taxes and assessments were paid. Therefore, the State Engineer determined that the water rights were not abandoned. That was correct.[18]

Thus, we will not set aside the determination regarding this application.

(5)   *Application No. 51051 (Harriman)*

>BF>[15] >The State Engineer found, among other things,[19] that the water rights on the parcels in question had not been abandoned because the water itself had been continuously used and there had been a thwarted attempt to transfer.[20] That was supported by the evidence. Pyramid complains that the attempt was before the period of nonuse, but that is not fatal to the rights holder.

Thus, we will not set aside the determination regarding this application.

(6)   *Application No. 51237 (Wolf)*

The State Engineer determined that the evidence of nonuse presented by Pyramid was questionable, but that was not dis-

---

[18]*See* paragraph A(3), *supra* p. 16074.

[19]As to two of the parcels (3 and 11) the State Engineer pointed to defects in Pyramid's evidence, and as to Parcels 3, 5, 6, and 11, the State Engineer pointed to the beneficial use due to the inherent irrigation in and around dirt-lined ditches. We need not decide those questions regarding those parcels.

[20]*See* paragraph A(2), *supra* pp. 16073.

positive. What was dispositive was the determination that, essentially, the use of the property in question was not inconsistent with irrigation and all taxes and assessments had been paid. That alone was sufficient to show a lack of intent to abandon.[21] In addition, the State Engineer pointed out that the water itself had been used continuously.

[16] The exception to the finding that the uses were consistent with irrigation was the further determination that there was a drain ditch on the land and that the ditch was an inconsistent use. However, the State Engineer then determined that Pyramid had not sufficiently quantified the amount of land covered by the ditch, or the placement of that ditch on the land. In so doing, he imposed too high a burden of persuasion upon Pyramid. *See Orr Ditch*, 256 F.3d at 947.

What is plainly shown by the record and actually found by the State Engineer is: "[b]oth sides agree there is a drain ditch in the middle of the existing place of use . . . and [Pyramid's] witnesses quantified that as occupying 1.0 acre of land." Moreover, the applicant agreed that the "drain ditch occupies the center of the existing place of use." Despite that, the State Engineer declared that Pyramid's evidence was insufficient. That determination is not supportable.

[17] Thus, although we will not set aside the State Engineer's decision for the most part, his decision as to the land occupied by the drain ditch must be reversed.

(7)    *Application No. 51608 (DeBraga)*

The State Engineer determined that although the water itself had been continuously used, there was a substantial period of nonuse on the parcels to which that water was appurtenant. The water rights allocated to Parcels 1 and 9 had not been used there for thirty-nine years, and the use of the

---

[21]*See* paragraph A(3), *supra* p. 16073.

land was inconsistent with irrigation. Also, the water rights allocated to Parcel 2 had not been used there for seven years, and the use of the land was inconsistent with irrigation. Because of the inconsistent use, the payment of taxes and assessments was not relevant.

However, the State Engineer declared that the fact that the applicant had actually been on the Board of TCID from 1974 to 1998 sufficed to show that the applicant had been thwarted because he had intimate knowledge that no transfer of rights would be allowed from 1973 to 1984.[22] Surely, said the State Engineer, that should suffice. That has some logic to it, but comes parlously close to the futility claim that we have roundly rejected. *See Alpine VI*, 340 F.3d at 918; *Alpine V*, 291 F.3d at 1076; *Alpine II*, 878 F.2d at 1223.

Nevertheless, as the district court pointed out, and as the record shows, the applicant did, in fact, inquire about a transfer of the water rights and was "told no." The State Engineer's contrary suggestion is not supported by the record. Moreover, there is no reason to believe that the State Engineer omitted that fact on the basis of credibility as opposed to mere oversight. We see no proper purpose in returning the matter for further clarification of that question.

[18] Still and all, a further difficulty lurks as to Parcels 1 and 9. Even accepting the fact that the applicant served on the TCID's Board from 1974 to 1998 and made an inquiry about transfer during that time, all of that came after these parcels had been put to uses inconsistent with irrigation since 1948. On no theory that we have accepted could it be said that the water rights had not been abandoned during that twenty-five-year period before any thwarted attempt was made.

A belated request will not do; if it were enough, all of our prior jurisprudence on this subject would fall away and be

---

[22]*See Alpine V*, 291 F.3d at 1076 n.19.

subsumed in a mere determination of whether there was a continuous use of the water itself. Obviously that is because there *is* a request (thwarted or not) as soon as any application is made, and that alone would then suffice if the use had been continuous. Under our cases, that would be the veriest nonsense; it is not the law.

[19] Thus, we uphold the State Engineer's decision as to Parcel 2, but the decision as to Parcels 1 and 9 must be reversed.

(8)   *Application No. 53910 (Thomas)*

[290 The State Engineer determined that Pyramid had submitted insufficient evidence to show that there had been a period of nonuse for five successive years and, therefore, found no forfeiture. The State Engineer recognized that there was some evidence that the land was not irrigated during certain years. Still, that did not show by clear and convincing evidence that the land had been out of use for five consecutive years. In fact, there was evidence to the contrary. Perhaps the State Engineer could have inferred that there was a five-year hiatus in use, but he was not compelled to do so by the facts in this record.

Thus, we will not set aside the decision on this application.

(9)   *Application No. 52843 (Inglis)*

[21] The State Engineer determined that the dirt-lined ditches in question here did, themselves, make a beneficial use of water because the ditches and the land surrounding those ditches did absorb water, grasses and the like grew as a result, and cattle pastured on those plants. It followed, of course, that the use was not inconsistent with irrigation. The State Engineer did not err.

It is true that in *Alpine VI*, 340 F.3d at 924, we rejected the notion that a dirt-lined ditch is, ipso facto, a beneficial use,

but we went on to say: "There is a possibility that along the course of a ditch, there may be some beneficial use and appurtenant rights if the water is used for lateral root irrigation . . . ." *Id.* at 925. In these proceedings and based on the evidence before him, the State Engineer found precisely that, and we find no error.

Pyramid argues that there was no showing to support that determination because the exact quantity of vegetation and the exact amount of water consumed in growing that vegetation was not shown. We disagree with that characterization and fail to see how we can overturn the State Engineer's determination that the ditches did not constitute an inconsistent use, but were, in fact, beneficial pasture.

Thus, we will not set aside the decision on this application.

(10)   *Application No. 51734 (Bright)*

**[22]** The State Engineer determined that the water rights on the parcel in question were not abandoned because the dirt-lined ditches and adjacent land were irrigated due to the flow of water in the ditch. That flow caused the growth of grasses and was pasture. We find no error in that determination.

Thus, we will not set aside the decision on this application.

## CONCLUSION

We have, once again, been called upon to revisit water rights issues arising out of the Newlands Reclamation Project and the Orr Ditch Decree. We appreciate that the State Engineer and some of the applicants are becoming mighty tired of their trips to and from the federal court system. Thus, we have tried to sharpen our statement of the rules that must be applied. Alas, we cannot bring this process to a close, but must let parts of it continue on their torturous path. In short:

(1)    We affirm as to the rulings on the following applications: No. 49999 (Workman); No. 52335 (Ponte); No. 50008 (Rambling River Ranches) as to abandonment; No. 51043 (Stix); No. 51051 (Harriman); No. 51237 (Wolf), as to land not occupied by the drain ditch; No. 51608 (DeBraga) as to Parcel 2; No. 53910 (Thomas); No. 52843 (Inglis); and No. 51734 (Bright).

(2)    We reverse as to the rulings on the following applications: No. 50008 (Rambling River Ranches) as to forfeiture of Parcel 2 and portions of Parcels 8 and 9; No. 51237 (Wolf) as to land occupied by the drain ditch; No. 51608 (DeBraga) as to Parcels 1 and 9.

(3)    We remand for further consideration as to the rulings on the following application: No. 50008 (Rambling River Ranches) as to forfeiture of Parcels 11 and 12.

AFFIRMED    in    part,    REVERSED    in    part,    and REMANDED for further consideration in part.

Costs on appeal are awarded against Pyramid as to Applications No. 49999 (Workman); No. 52335 (Ponte); No. 51043 (Stix); No. 51051 (Harriman); No. 53910 (Thomas); No. 52843 (Inglis); and No. 51734 (Bright). The parties shall bear their owns costs on appeal as to Applications No. 51237 (Wolf); No. 50008 (Rambling River Ranches); and No. 51608 (DeBraga).