**UNITED STATES of America,**
**Plaintiff,**

**and**

**Pyramid Lake Paiute Tribe**
**of Indians, Appellant,**

**v.**

**ALPINE LAND & RESERVOIR**
**COMPANY, a corporation,**
**Defendant,**

**Nevada State Engineer, Real-**
**party-in-interest.**

**Louis A. Guazzini, Jr.; Lila Lou Guazzini; Samuel R. Guazzini; Theodore L. Guazzini; Virgil Getto; Steve Hancock; Ernest Hucke; Richard Hucke; Elbert L. Brown; Sophie Brown; Marshall L. Brown; Isabelle E. Winder; James W. Johnson, Jr.; Richard**

---

S. Latten; Jean C. Latten; Robert Donald; Alice Minner; Mario Peraldo; Silvio Peraldo, dba Peraldo Brothers; Marjorie Ann Shepard; Ted R. Smitten; Wade Workman; Merwyn Lewis Family Trust; Harvey O. Kolhoss; Darrell W. Norman; Patricia A. Norman; Thomas A. Pflum; Harald V. Zipprich; Erika M. Zipprich; Lem S. Allen Family Trust; Roy Rogers; Erma Dean Rogers; Arnold H. Rhom; Laura R. Rhom; Larry G. Yori; Robert E. Williamson; Rambling River Ranches, Inc.; Bruce K. Kent; Jamie L. Kent; Samuel R. Hiibel; Harmon Sanford; Donald R. Harmon; Arthur R. Peel; Lani Lee Peel; Louis Gomes Family Trust; Christopher J. Gomes; David F. Stix; Donna R. Stix; Henry C. Dieckman; Clifford Matley Family Trust; David L. Matley And Christine L. Matley Family Trust; Howard Wolf; Barbara Wolf, Applicants–Appellees.

United States of America,
Plaintiff–Appellant,

v.

Alpine Land & Reservoir Company,
a corporation, Defendant,

and

Nevada State Engineers, Real–Party–
In–Interest–Appellee.

United States of America; Pyramid
Lake Paiute Tribe OF Indians,
Plaintiffs–Appellees,

v.

Alpine Land & Reservoir Company,
a corporation, Defendant,

and

Nevada State Engineer, Real–Party–
In–Interest–Appellee.

United States of America, Plaintiff,

and

Pyramid Lake Paiute Tribe of Indians,
Plaintiff–Appellant,

v.

Alpine Land & Reservoir Company, a
corporation, Defendant–Appellee,

Ray E. Mertens; Bruna L. Mertens;
Samuel R. Guazzini; Esther P. Slagle;
Georgeen E. Huber; Darrell J. Hofheins; Bob Minner; Robert Smith,
Appellees,

Nevada State Engineer, Real–Party–
In–Interest–Appellee.

United States of America,
Plaintiff–Appellant,

and

Pyramid Lake Paiute Tribe
of Indians, Plaintiff,

v.

Alpine Land & Reservoir Company, a
corporation, Defendant–Appellee,

Nevada State Engineer, Real–Party–
In–Interest–Appellee.

Nos. 01–15665, 01–15814, 01–15816,
01–16224, 01–16241.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 2002.

Filed Aug. 20, 2003.

See also 291 F.3d 1062.

Robert S. Pelcyger, Louisville, CO, for plaintiff-appellant Pyramid Lake Paiute Tribe.

Katherine J. Barton, Department of Justice, Washington, DC, for plaintiff-appellant United States of America.

Craig A. Pridgen, San Francisco, CA, for appellants/appellees Louis A. Guazzini, Jr., et al.

Laura A. Schroder, Portland, OR, for appellees Rambling River Ranches, et al.

Dale E. Ferguson, Reno, NV, for appellees Clifford L. Matley Family Trust, et al.

Michael L. Wolz, Deputy Attorney General, Carson City, NV, for Nevada State Engineer, real-party-in-interest-appellee.

Before SNEED, McKEOWN, and PAEZ, Circuit Judges.

## OPINION

PAEZ, Circuit Judge.

In 1859, the United States set aside almost 500,000 acres in Nevada as a reservation for the Pyramid Lake Paiute Tribe of Indians ("the Tribe"). The central feature of the reservation, the ancestral home of the Pyramid Lake Paiute Tribe, is Pyramid Lake. In 1902, Congress passed the Reclamation Act of June 17, 1902, ("the Reclamation Act") and withdrew approximately 250,000 acres in western Nevada from public use in 1903; this land became part of the Newlands Reclamation Project ("the Project"). 32 Stat. 388, 43 U.S.C. §§ 372 *et seq.* The Project was intended to convert some of the country's most arid land into irrigated farmland, diverting water from the Carson River and the Truckee River, which is the principal source of water for Pyramid Lake. The diversion allowed farmers and ranchers to convert arid land into irrigated and fertile land, reduced the surface area of Pyramid Lake, threatened the survival of various indigenous fish and the health of the Lake's ecosystem, and spawned years of contentious litigation that continues in the case before us today.

In the 1980s, landowners holding water rights in the Project submitted transfer applications to the Nevada State Engineer to change the place of use of water rights on their farms. The Tribe protested the applications, claiming that the rights could not be transferred because they had been abandoned, forfeited, or never perfected. The United States intervened in the transfer application proceedings before the State Engineer and joined the Tribe in its protest. After years of litigation and several appeals to this court, the State Engineer ultimately granted all but seven of the transfer applications and rejected nearly all of the Tribe's objections.

In so ruling, the State Engineer relied on his earlier ruling that intrafarm transfers were exempt from forfeiture and abandonment under Nevada law. The State Engineer also made a blanket determination that conveying water through dirt-lined supply ditches constituted a beneficial use of water that could be perfected and therefore subject to transfer. The district court affirmed both of the Engineer's rulings in their entirety. The Tribe, the United States, and three applicants appeal all five of the district court's orders that affirmed the Engineer's rulings.[1]

Appeal Nos. 01–15665, 01–15814, and 01–15816 involve appeals of the Nevada State Engineer's Ruling No. 4798 granting various individual transfer applications. Each application by the land owners sought authority to transfer water rights appurtenant to one or more specifically defined segments or parcels of land. In these three appeals, the United States, the Tribe, and three applicants[2] who sought to transfer water rights appeal the district

---

1. We consolidated the five different cases for oral argument: Appeal Nos. 01–15665, 01–15814, 01–15816, 01–16224, and 01–16241 (the "Change Application Cases").

2. Louis Guazzini, Darrell and Patricia Norman, and Isabelle Winder are the three groups of applicants who originally appealed the denial of their transfer applications. As noted below, Louis Guazzini later withdrew his appeal. See *infra* note 6.

court's judgment upholding the State Engineer's rulings that approved various transfer applications and denied other applications. The majority of the transfer applicants involved in these three appeals (as appellees) were successful in obtaining a ruling from the State Engineer approving their applications for transfer of rights and in prevailing before the district court.

Appeal Nos. 01–16224 and 01–16241 involve an appeal of the Nevada State Engineer's Ruling No. 4825 on seven transfer applications. The appellants in these two appeals are also the Tribe and the United States; the appellees are successful transfer applicants. In all five of the consolidated appeals, the Tribe initiated challenges to the transfer applications, claiming that some or all of the water rights that the applicants sought to transfer were ineligible for transfer because they had been abandoned, forfeited, or never perfected.

After the district court affirmed the State Engineer's rulings that are at issue in these appeals, in a separate case with related issues, we rejected a blanket equitable exemption for intrafarm transfers from the operation of Nevada's laws on forfeiture and abandonment. *See United States v. Alpine Land & Reservoir Co.,* 291 F.3d 1062 (9th Cir.2002) (*Alpine V*). To the extent that the State Engineer's approval of the transfer applications at issue here depended on this exemption, the district court's judgment upholding the State Engineer's February 20, 2001 and April 18, 2001 rulings must be reversed and remanded so that the district court or, if appropriate, the State Engineer can make findings in accordance with the standards for forfeiture and abandonment that we established in *Alpine V*.

Appellee transfer applicants argue that, with respect to some applications, the Engineer based his decision on alternative grounds regarding abandonment and forfeiture and therefore the transfers can be upheld by this court despite the Engineer's ruling on intrafarm transfers. Although some of the individual applications do include findings with respect to use of the water right and other facts relevant to abandonment and forfeiture, the rulings failed to address *Alpine V*'s minimum requirements with respect to abandonment [3] or the equitable balancing requirements with respect to forfeiture.[4]

Therefore, under our recent decision in *Alpine v.*, even where the State Engineer offered an alternative basis for his ruling, we must remand these applications. Because of the long and contentious nature of this litigation, we set forth the type of findings that the State Engineer must include in his ruling with respect to each application to permit the district court to affirm on the basis of the Engineer's ruling. We uphold the district court's rulings to the extent that they affirm the State Engineer's determination of the contract date for water rights with respect to each parcel. Thus, parcels with contract dates before 1913 are not subject to forfeiture (but they are subject to abandonment).

---

**3.** As discussed below, when there is a challenge to a transfer application, we have held that "[a]t a minimum, proof of continuous use of the water right should be required to support a finding of a lack of intent to abandon" and that each landowner is "required to present evidence that he or she attempted unsuccessfully to file for a change in place of use, or at least inquired about the possibility." *Alpine V*, 291 F.3d at 1077.

**4.** Under *Alpine V*, "equity may be appropriate on a case-by-case basis in the forfeiture context if a landowner can show that steps were taken to transfer water rights during the period of non-use, but that those steps were thwarted by the government or TCID." *Alpine V*, 291 F.3d at 1078.

On remand, the Engineer must make findings to satisfy the minimum requirements set forth in *Alpine V* with respect to abandonment. Equitable exemptions from forfeiture may be appropriate on a case by case basis if the applicant can show that she took steps to transfer the rights during the period of non-use, but that the applicant was thwarted in these attempts by the government. In making these equitable determinations, the Engineer should make explicit findings balancing the interests of the applicants with the negative consequences to the Tribe resulting from any increased diversions from the lake.

The Tribe also alleges that the Engineer did not apply a clear and convincing standard in its evaluation of the evidence the Tribe and the United States presented during the evidentiary hearings to determine if applicants had failed to utilize their water rights for substantial periods of time. There is substantial evidence to support the Engineer's factual findings with respect to the quality of the photographic evidence offered by the Tribe. It appears that the Tribe's challenge is not just to the evidentiary standard but also to the adequacy of the State Engineer's findings with respect to each application. On remand, therefore, we reiterate that in rendering factual findings, the State Engineer must apply a clear and convincing standard in evaluating evidence of abandonment and forfeiture with respect to each individual parcel.

We also reverse and remand the district court's rulings that affirmed the State Engineer's determination that the use of land for on-farm, dirt-lined supply ditches constitutes a beneficial use of irrigation water on the land covered by the ditches. A water right appurtenant to a parcel cannot be perfected and therefore subject to transfer unless it is put to beneficial use. *See Nev.Rev.Stat.* § 533.035. The Engineer's conclusion that "if a dirt-lined supply ditch is within the irrigable area of an existing place of use, water was beneficially used on the parcel of land covered by the dirt-lined ditch" is not supported by substantial evidence. Therefore, we reverse the district court's ruling that affirmed the State Engineer's determination regarding dirt-lined ditches and order on remand individual findings as to the beneficial use of the water as it relates to all parcels where the transfer applicant claimed an appurtenant water right due to the passage of water through the ditch.

## I. Background

### A. The Newlands Reclamation Project and the Pyramid Lake Paiute Indian Tribe

The Newlands Reclamation Project was the first federal reclamation project created under the Reclamation Act of June 17, 1902.[5] In 1902, the government withdrew close to 250,000 acres in western Nevada from public use for the Project, diverting waters from the Truckee and Carson Rivers to irrigate a large area near Fallon, Nevada to facilitate conversion to farmland. *See Alpine V*, 291 F.3d at 1066. The United States sold water rights associated with the Project land to users within the project, and individual landowners hold the water rights pursuant to contracts between the landowners and the Department of Interior. *See United States v. Orr Water Ditch Co.*, Equity No. A-3 (D.Nev. Sept. 4, 1944) (*Orr Ditch Decree*). Since 1926, the Truckee–Carson Irrigation District (TCID) has operated the Project subject to administrative regulations and or-

---

**5.** Section 8 of the Reclamation Act states in part: "The right to the use of water acquired under the provisions of this Act shall be ap-

purtenant to the land irrigated, and beneficial use shall be the basis, the measure, and the limit of the right." 43 U.S.C. § 372.

ders promulgated by the U.S. Bureau of Reclamation (BOR).

The Pyramid Lake Paiute Tribe's Reservation was established in 1859 when the federal government set aside nearly half a million acres in western Nevada for the Tribe. Pyramid Lake, "widely considered the most beautiful desert lake in North America," *Nevada v. United States,* 463 U.S. 110, 114, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (citation omitted), is the central feature of the Tribe's reservation, and its sole source of water is the Truckee River. The Project's diversion of water from the Truckee River caused the surface area of Pyramid Lake to decrease over the years, threatening the survival of indigenous fish species. *See Alpine V,* 291 F.3d at 1066.

We described the long and difficult history of the relevant litigation leading up to this case in *Alpine V. See id.* at 1065–71. Therefore, we do not re-state it here. However, we note that several issues raised in this case were resolved in the long series of *Alpine* cases that were described in detail in the Background section in *Alpine V.* Where applicable, therefore, when addressing the issues raised here we refer to several of these cases throughout the opinion.

## B. The Change Applications in Appeal Nos. 01–15665, 15814, 15816 (Ruling on Remand No. 4798)

After our remand in *United States v. Alpine Land & Reservoir Co.,* 878 F.2d 1217, 1229 (9th Cir.1989) (*Alpine II* ) for proceedings with respect to perfection, forfeiture, and abandonment, the State Engineer proceeded to consider approximately 200 transfer applications. By 1992, the Engineer had issued rulings on the applications and the United States and the Tribe appealed those rulings to the district court. On April 20, 1992, the district court granted a joint motion of the lead parties to defer consideration of those rulings,

pending a decision by this court on legal issues raised in the appeal of the district court's ruling on the original 25 applications relating to forfeiture and abandonment filed after *Alpine I.*

We resolved those issues in *United States v. Alpine Land & Reservoir Co.,* 983 F.2d 1487 (9th Cir.1993) (*Alpine III* ), and on September 3, 1998, the district court remanded all of the pending transfer application cases, including the applications at issue in the consolidated cases in this appeal, to the State Engineer. The State Engineer re-opened the evidentiary hearings on the applications on the issue of perfection, abandonment, and forfeiture (including the ones at issue in Appeal Nos. 01–15665, 01–15814, and 01–15816). Following the district court's memorandum order in *United States v. Alpine Land & Reservoir Co.,* 27 F.Supp.2d 1230, 1241 (D.Nev.1998) (*Alpine IV* ), which upheld the State Engineer's determination that intrafarm transfers were exempt from Nevada's abandonment and forfeiture statutes, the State Engineer once again re-opened hearings on these applications to allow additional evidence on certain issues, including whether an application involved an intrafarm transfer of water rights.

Following these evidentiary hearings, the State Engineer issued Ruling No. 4798. The Engineer considered 40 transfer applications in Ruling No. 4798, and of those applications the Engineer found that "thirty of them at least in part involved proposed transfers where the existing and proposed places of use [were] both within the farm unit owned by the applicants and that, as a result, the proposed transfers constituted intrafarm transfers not subject to the doctrines of forfeiture and abandonment according to the District Court's September 3, 1999 Order."

Four of the transfer applications considered were approved in part because they

involved on-farm dirt-lined ditches that the State Engineer found to have appurtenant water rights. The State Engineer made a General Finding of Fact that the parcels used for ditches within existing irrigable areas of water-righted farms have the same legal status and appurtenant water rights as parcels actually under irrigation. Nev. State Eng'r Ruling on Remand No. 4798 at 36–37 (Sept. 24, 1999). As to six of the forty transfer applications, the Tribe asserts that the Engineer erred in concluding that the Tribe had not shown clear and convincing evidence of non-use or intent to abandon by the landowner.

Three transfer applications that were denied have been appealed by Louis Guazzini, Jr. (Application 47809, parcels 3 and 4)[6], Isabelle Winder (Application 49111, parcel 1), and Darrell and Patricia Norman (Application 49285, parcel 1). The Tribe and the United States appealed the approval of transfers included in Ruling No. 4798 to the district court, and on February 22, 2001 the court upheld the Engineer's ruling in all respects.

### C. Appeal Nos. 01–16224, 16241 (Ruling on Remand No. 4825)

During the evidentiary hearings that preceded the State Engineer's Ruling No. 4798, certain transfer applicants (including the seven applicants involved in appeal numbers 01–16224 and 01–16241) filed petitions with the State Engineer requesting that he summarily approve and certify without an administrative hearing that their transfer applications were intrafarm and therefore entitled to equitable relief from any claim of forfeiture and abandonment under *Alpine IV*.

In Ruling 4825, the State Engineer agreed that the transfer applications and the applicants' intrafarm transfer claims could be decided without an administrative hearing. Indeed, the applicants agreed that they would not dispute the Tribe's evidence relating to non-use of water rights (without admitting its validity) and waive any cross-examination of the Tribe's witnesses. As part of the "General Findings of Fact Applicable to All Applications Under Consideration in this Ruling," the Engineer noted in Part III, "Equity," that "in some situations ... intrafarm transfers of water rights within the Newlands Project should be upheld as a matter of equity, and the principles of forfeiture and abandonment would not apply." Nev. State Eng'r Ruling No. 4825 at 23 (Dec. 21, 1999) (citing *Alpine IV*). However, the Engineer proceeded to make findings of fact with respect to each parcel before approving the transfers. *Id.*

Furthermore, the State Engineer made the same general findings of fact regarding "on farm, dirt-lined ditches" as the Engineer made in Ruling 4798. Several transfer applications at issue in the present appeal included requests to transfer water rights that were from parcels of land used for dirt-lined ditches rather than for the cultivation of crops. In General Finding of Fact IX, the Engineer found that, in the early days of the Project, the Reclamation Service (predecessor to the Bureau of Reclamation) did not exclude dirt-lined ditches from the "irrigable areas" of project farms and therefore the ditches were "water righted." *Id.* at 36.

In *Alpine V,* the Tribe and the United States appealed the district court's affirmance of several transfer applications, including applications for intrafarm transfers. We established several principles in *Alpine V.* First, with respect to abandonment, we noted that we were controlled by our earlier holding in *United States v. Orr Water Ditch Co.,* 256 F.3d 935, 945 (9th

---

**6.** Guazzini notified the court on June 20, 2003, that his appeal had been settled and he was withdrawing it. We therefore do not address his claim.

Cir.2001),[7] and upheld the Engineer's determination that a prolonged period of non-use of water rights does not create a rebuttable presumption of the landowner's intent to abandon those rights. *Alpine V,* 291 F.3d at 1072. We further noted that *Orr Ditch* controls whether payment of Project operation and maintenance assessments is evidence of a lack of intent to abandon: "abandonment is to be determined 'from all the surrounding circumstances,' and those circumstances certainly include the payment of assessments and taxes." *Id.* at 946 (citing *Orr Ditch,* 256 F.3d at 946). However, the payment of fees and taxes is only one factor to be considered. As we advised in *Orr Ditch,* "[o]ther important circumstances to be considered include non-use of the water right and the construction of structures incompatible with irrigation." 256 F.3d at 946 (citations omitted). In *Orr Ditch,* we further endorsed the district court's statement in *Alpine IV* regarding how it would view evidence of abandonment:

> Where there is evidence of both a substantial period of nonuse, combined with evidence of an improvement which is inconsistent with irrigation, the payment of taxes or assessments, alone, will not defeat a claim of abandonment. If, however, there is only evidence of nonuse, combined with the finding of a payment of taxes or assessments, the court concludes that the Tribe has failed to provide clear and convincing evidence of abandonment.

*Id.* (quoting 27 F.Supp.2d at 1245)

In *Alpine V,* we concluded that, "[a]t a minimum, proof of continuous use of the water right should be required to support a finding of lack of intent to abandon. In addition, each landowner should be required to present evidence that he or she attempted unsuccessfully to file for a change in place of use, or at least inquired about the possibility of a transfer and was told by the government or TCID that such a transfer was not permitted." *Alpine V,* 291 F.3d at 1077.

The appellants in *Alpine V* also requested that we reconsider our ruling in *Alpine III* that 1902 was not the relevant priority date for determining the application of the Nevada forfeiture statute. *Id.* at 1073. In *Alpine V* we declined the invitation, citing our holding in *Orr Ditch* that landowners cannot claim 1902 as the date their water rights were initiated, but rather that they had to demonstrate that they took affirmative steps to appropriate water prior to 1913 to be exempt from the state forfeiture statute. *Id.*

Furthermore, as explained below, in *Alpine V* we explicitly rejected a blanket exemption from the operation of forfeiture and abandonment laws for intrafarm transfers. *Id.* at 1076.

## II. Analysis

### A. Intrafarm Transfers

 The Tribe and the United States appeal the same ruling in this case that they appealed in *Alpine V*—the district court's determination in *Alpine IV* that intrafarm transfers of water rights are exempt from the operation of Nevada's forfeiture and abandonment laws on the

---

**7.** In *Orr Ditch,* the Tribe and the United States opposed the town of Fernley's several proposed transfers of water rights to change the manner and place of the use of rights within the Project. The Tribe and the United States contended that the rights had been forfeited or abandoned under Nevada state law. We reversed and remanded, holding, *inter alia,* that all of the water rights in the project were not initiated in 1902, and that prolonged non-use of a water right may raise an inference of intent to abandon but does not create a rebuttable presumption of abandonment. *United States v. Orr Water Ditch Co.,* 256 F.3d 935 (9th Cir.2001).

basis of equitable considerations. *See Alpine IV*, 27 F.Supp.2d at 1244. In *Alpine V*, we rejected the district court's decision to grant an equitable exemption to intrafarm transfers. In *Alpine IV*, the district court identified several factors to support its equitable determination that intrafarm transfers should be exempt from Nevada's forfeiture and abandonment laws and that principles of equity should apply: (1) the procedures to transfer water rights changed at least three times over the years; (2) the farmers filed transfer applications when finally told to do so by TCID; (3) the individuals were legally entitled to use the water on one part of their land and continued to beneficially apply the water to their land (albeit in a different location than described by the original contract); and (4) there was no evidence that any of the landowners seeking an intrafarm transfer used more water than the amount granted by the original contract. *Id.*

In *Alpine V*, we rejected these arguments (the same arguments raised in the present case) because they rested in part on an erroneous assumption "that the government and TCID had either explicitly or tacitly approved these transfers prior to the landowners' submission of [their] formal transfer applications." *Id.* at 1075. Although *Alpine II* dealt with transfers for value that altered the use of a water right by transferring it to a different property, while intrafarm transfers alter the use of a water right within the same property, in *Alpine V* we determined that the distinction did not alter our reasoning. We explained:

> It is clear that under both federal and state law, a water right is appurtenant to the land irrigated.... Therefore, as a matter of law, it is correct to say that the water rights in question attached to the specific parcel to which water was

beneficially applied, rather than the entire property under contract.

*Id.* at n. 18 (internal citations omitted).

The transfer applicants here make several arguments identical to those they made in *Alpine V. See id.* at 1075–76. First, they argue that they were simply applying water that they validly owned to new places of use on the same farmland, and that application of state law principles of forfeiture or abandonment would be unjust because until 1983 the applicants did not know that they owned the water rights. Furthermore, the applicants here and in *Alpine V* claimed that there was no legal way for them to transfer the water within their farms because of the government-imposed moratorium on transfers. Finally, they argue that an equitable exemption was appropriate because the United States knew or should have known about the existence of these intrafarm transfers before landowners began to file transfer applications.

> The *Alpine V* court reaffirmed that
>
> Alpine II forecloses the argument that the landowners did not know that they possessed ownership rights subject to the transfer requirements.... [S]ince the United States never had the authority under the Reclamation Act to approve such transfers, the fact that they occurred has no bearing on whether state law principles of forfeiture and abandonment should now be applied. To hold otherwise would exempt all informal intrafarm transfers from the strictures of the *Alpine Decree*—an outcome that *Alpine II* specifically rejected.

*Id.* at 1076, *citing Alpine II*, 878 F.2d at 1222–23.

The *Alpine V* court also specifically addressed the applicant appellees' argument that the government-imposed moratorium on transfers supports the blanket application of an equitable exemption from forfei-

ture or abandonment. *Id.* Because many of the parcels at issue in the transfer applications did not involve a period of non-use that coincided with the moratorium, we rejected that argument, concluding that "equity should not be used to justify a generalized equitable exemption divorced from the facts of each particular case." *Id.* However, we noted that "equitable relief might be appropriate on a case-by-case basis to prevent individual transfer applicants from losing their water rights." *Id.*

To allow for individual consideration of each transfer application, we reversed the district court's grant of equitable relief to those landowners facing abandonment claims and remanded for further consideration

> because the landowners may demonstrate that they did not abandon their water rights as a matter of law. On remand, the district court is instructed to make factual findings, or to remand to the Engineer to do so, in order to determine whether each individual landowner had the requisite intent to abandon in light of the factors noted in the district court's opinion. At a minimum, proof of continuous use of the water right should be required to support a finding of lack of intent to abandon. In addition, each land-owner should be required to present evidence that he or she attempted unsuccessfully to file for a change in place of use, or at least inquired about the possibility of a transfer and was told

by the government or TCID that such a transfer was not permitted.

*Id.* at 1077 (internal citations omitted).

For the same reasons as we articulated in *Alpine V*, we reverse the district court's ruling to the extent that it granted a blanket equitable exemption of intrafarm transfers.

### 1. Equitable Relief and Forfeiture

■ Although we reject the district court's application of a blanket equitable exemption for intrafarm transfers, we also recognize that "equity may be appropriate on a case-by-case basis in the forfeiture context if a landowner can show that steps were taken to transfer water rights during the period of non-use, but that those steps were thwarted by the government or TCID." *Id.* at 1078. Under Nevada state law, water rights that are not used for five consecutive years are subject to loss through statutory forfeiture to the extent of non-use. *See Nev.Rev.Stat.* § 533.060(2) (amended 1999) (surface water)[8] and *Nev. Rev.Stat.* § 534.090 (ground water). However, Nevada law provides that the forfeiture law does not apply to water rights that were vested or for which water right appropriations were initiated before the passage of the forfeiture act in 1913. *Nev. Rev.Stat.* § 533.085. Defendant landowners argue that state forfeiture law does not apply to water rights in the Project because the water rights vested in 1902, the year the United States obtained Project-wide rights with the creation of the Project.

---

**8.** In 1999, Nevada revised *Nev.Rev.Stat.* § 533.037, "Determination of priority of water right acquired for use in federal reclamation project," and *Nev.Rev.Stat.* § 533.060 on loss or abandonment of rights. Although these statutes address the forfeiture and abandonment issues involved in these consolidated appeals, they do not apply here because the water rights at issue were challenged in a judicial or administrative proceeding on or before April 1, 1999. *See* Nev.Rev.Stat. ch. 515, § 7 (1999). The litigation regarding the transfer applications at issue here dates back at least to 1986, when the applications were addressed in public administrative hearings in January and February of 1986, February of 1989, and April 1, 1999. Nev. State Eng'r Ruling No. 4798 at 3.

However, we have repeatedly rejected the idea that all of the rights to water in the project vested in 1902. *See, e.g., Alpine III,* 983 F.2d at 1496 ("[T]he individual rights at issue ... did not vest in 1902 when the United States obtained Project-wide rights."). In *Alpine III* we remanded for an individualized determination for each parcel at issue of whether and when the right vested. *Id.* In *Orr Ditch* we explained why, given the purpose of Nevada Revised Statute section 533.085 to protect water right-holders who had obtained or initiated appropriations of their water rights on the understanding that those rights would not be subject to forfeiture, the terms "initiated appropriation" in section 533.085 could not refer to 1902, the date that the United States initiated water rights for the entire Newlands Project. "Such a reading would protect water-right holders who had done nothing at all to acquire water rights as of the date of the forfeiture statute.... [T]here was no reason to protect individuals who began the process of acquiring water rights after the effective date of the statute, because they did so with notice that any water rights they acquired would be subject to forfeiture." *Orr Ditch,* 256 F.3d at 942–43.

We adhere to the requirement we have consistently maintained, that "landowners cannot claim 1902 as the date their water rights were initiated, but rather ... [must] demonstrate that they took 'affirmative steps' to appropriate water prior to 1913 to be exempted from the state forfeiture statute." *Alpine V,* 291 F.3d at 1073 (reaffirming *Alpine III* holding). Because the

State Engineer's determination of the contract dates for the water rights at issue conformed to these requirements, and substantial evidence supports his determination as to the relevant contract date for each water right at issue, we uphold the district court's judgment to the extent that it affirmed the Engineer's rulings regarding the calculation of contract dates.

■ Once we accept the State Engineer's determination of the relevant contract dates, we must decide whether equitable considerations should apply in the individual applications at issue in these consolidated appeals. The State Engineer, however, did not make all of the necessary findings that would allow us to make this determination and we must therefore remand so that either the district court or the State Engineer can make all necessary factual determinations. On remand, the district court or State Engineer must apply the equitable exemption principles as set forth in *Alpine V,* and any equitable considerations must be balanced against "the negative consequences to the Tribe resulting from any increased diversions" of water. *Id.* at 1078 n. 21.[9] Because the State Engineer failed to apply this balancing test when he granted an equitable exemption for intrafarm transfers, the district court's judgment must be reversed to the extent it affirmed the State Engineer's application of a blanket equitable exemption of intrafarm transfers from Nevada's forfeiture law. *See id.* at 1078.[10]

9. The State Engineer asserts that there "may be facts currently in the record as to certain Change Applications that would support a finding that equitable relief is appropriate without further proceedings." However, given the specific requirements for applying an equitable exemption under *Alpine V* (such as consideration of whether the applicants attempted to transfer the water rights, and if so,

whether these attempts were thwarted, and consideration of any negative impact that an equitable exemption would have on the Tribe), there are insufficient facts in the record to make this determination at this stage.

10. The State Engineer rendered his rulings and the district court affirmed the rulings before we issued our opinion in *Alpine V.*

## 2. Equitable Relief and Abandonment

■ As to abandonment, equitable principles do not apply, even on a case-by-case basis, because transfer applicants may demonstrate that they did not have the intent to abandon and that they therefore did not abandon their water rights as a matter of law.[11] Thus, as in *Alpine V*, we direct the district court on remand to make factual findings (or to remand to the Engineer) "to determine whether each individual landowner had the requisite intent to abandon." *Alpine V*, 291 F.3d at 1077.

## B. Determination of Intent to Abandon

■ In Nevada, abandonment of a water right is the voluntary "relinquishment of the right by the owner with the intention to forsake and desert it." *In re Manse Spring*, 60 Nev. 280, 108 P.2d 311, 315 (1940). Abandonment requires both action and intent, and under Nevada law is "a question of fact to be determined from all the surrounding circumstances." *Revert v. Ray*, 95 Nev. 782, 786, 603 P.2d 262, 264 (1979).[12] The parties, however, argue that our case law, primarily as set forth in *Orr Ditch* and *Alpine V*, requires a very different analysis as to abandonment. Indeed, applicant transferees (appellees) argue that with respect to some applications, irrespective of the Engineer's erroneous conclusion regarding the equitable intrafarm exemptions, there is sufficient evidence in the record to approve the trans-

fers because the Tribe failed to show that the landowners intended to abandon their rights.

■ As a preliminary matter, we have stated several times that—unlike in most Western states—in Nevada non-use alone does not create a rebuttable presumption of an intent to abandon a water right. *See Alpine V*, 291 F.3d at 1072; *see also Orr Ditch*, 256 F.3d at 945. Furthermore, as stated above, under Nevada law, a determination of whether there exists an intent to abandon requires a consideration of all the relevant circumstances. *See Revert*, 603 P.2d at 264; *see also In re Manse Spring*, 108 P.2d at 316 (stating that courts must determine the intent of the claimant to decide whether abandonment has taken place, and in this determination may take non-use and other circumstances into consideration).

However, in *Orr Ditch* we set forth guiding principles that courts are to apply when confronted with a claim of abandonment:

Where there is evidence of both a substantial period of nonuse, combined with evidence of an improvement which is inconsistent with irrigation, the payment of taxes or assessments, alone, will not defeat a claim of abandonment. If, however, there is only evidence of nonuse, combined with the finding of a payment of taxes or assessments, the court con-

---

11. To establish that a water right has been abandoned requires a showing of intent to abandon. In contrast, to establish a forfeiture, one need not show an intent to forfeit. "While, upon the one hand, abandonment is the relinquishment of the right by the owner with the intention to forsake and desert it, forfeiture, upon the other hand, is the involuntary or forced loss of the right, caused by the failure of the appropriator or owner to do or perform some act required by the statute.... The element of intent, therefore, so necessary in the case of an abandonment, is not a necessary element in the case of forfei-

ture." *In re Manse Spring*, 60 Nev. 280, 108 P.2d 311, 315 (1940).

12. In *Alpine II*, we reaffirmed that under § 8 of the Reclamation Act, Nevada state law governs water right transfers in the Project. *Alpine II*, 878 F.2d at 1223. The United States Supreme Court has also affirmed this rule, stating that "the Act clearly provided that state water law would control in the appropriation and later distribution of the water." *California v. United States*, 438 U.S. 645, 664, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978).

cludes that the Tribe has failed to provide clear and convincing evidence of abandonment.

*Orr Ditch,* 256 F.3d at 946 (quoting the district court in *Alpine IV* ).

In *Alpine V,* we described the evidence required to prove or dispute a claim of abandonment as follows:

[a]t a minimum, proof of continuous use of the water right should be required to support a finding of lack of intent to abandon. In addition, each landowner should be required to present evidence that he or she attempted unsuccessfully to file for a change in place of use, or at least inquired about the possibility of a transfer and was told by the government or TCID that such a transfer was not permitted.

*Alpine V,* 291 F.3d at 1077.

■ The two cases may appear somewhat in tension, as *Orr Ditch* states explicitly that proof of use is not needed to defeat an allegation of abandonment, while *Alpine V* appears to affirmatively require proof of continuous use. Read together, however, we view the cases as requiring proof of continuous use in the absence of other evidence of lack of intent to abandon, such as payment of taxes or assessments; when such proof does exist, then proof of continuous use is not necessarily compelled. Indeed, this reading is consistent with the reaffirmation in *Alpine V* of our conclusion in *Orr Ditch* that "abandonment is to be determined 'from all the surrounding circumstances.'" *Id.* at 1072 (quoting *Orr Ditch,* 256 F.3d at 946).

In addition, although we also reaffirmed in *Alpine V* that a showing of non-use does not result in a rebuttable presumption of an intent to abandon, *see id.* (citing *Orr Ditch,* 256 F.3d at 945), once the protestant has offered some evidence of abandonment, the applicant must make some showing of use or of a lack of intent to abandon in order to withstand the chal-

lenge. Thus, we reject the individual applicants' argument that *Alpine V*'s minimum requirements are contrary to Nevada state law's requirement that all of the circumstances surrounding abandonment must be considered in determining whether the water right has been abandoned. On the contrary, reading *Alpine V* and *Orr Ditch* together, we see that *Alpine V*'s requirements help guide the Engineer's consideration of all the relevant circumstances.

■ Together, *Alpine V* and *Orr Ditch* suggest that in order to defeat a claim of abandonment the transfer applicant must show continuous use and an attempt to transfer the water right. The extensive history of this water rights transfer litigation has established that a landowner's decision not to apply for a transfer in light of the Reclamation Act's directive that state law governs such transfers was a decision taken at the applicant's own risk. *See Alpine II,* 878 F.2d at 1223 (holding that the 1902 Reclamation Act, not our approval of the Alpine Decree in 1983, established the application of state law). Furthermore, in the context of the Reclamation Project, we have clearly stated that "as a matter of law, it is correct to say that the water rights in question attached to the specific parcel to which water was beneficially applied, rather than the entire property under contract." *Alpine V,* 291 F.3d at 1075 n. 18. Thus, our decision in *Alpine V* setting forth a transfer applicant's minimum showing to establish a lack of intent to abandon directs our present inquiry into the intent to abandon.

## C. The Government–Imposed Moratorium

■ The individual applicant appellees assert that the government's moratorium on transfer applications between 1973 and

1984 [13] made any attempt to apply for a transfer during that period futile as a matter of fact and law. Therefore, they assert that the five-year statutory period for forfeiture should be tolled during that period and that a failure to apply for a transfer during the moratorium should have no bearing on whether the applicant intended to abandon their water rights.

In *Alpine V* we rejected this argument because many of the parcels at issue in the transfer applications in that case did not involve periods of non-use that coincided with the moratorium. *Alpine V*, 291 F.3d at 1076. Even if there were an overlap, equitable relief would not be appropriate unless the applicants could show that they submitted or attempted to submit an application, or made an inquiry into the application process. *See id.* at 1077.

Applicant appellees contend that requiring applicants to show that they applied for a transfer during the moratorium would amount to a requirement that the applicants show that they engaged in a futile act. *See Engelmann v. Westergard*, 98 Nev. 348, 353, 647 P.2d 385, 389 (Nev. 1982) ("[T]he doctrine of exhaustion of remedies does not require one to initiate and participate in proceedings ... which are vain and futile."). This argument is similar to the one we rejected in *Alpine II*, in which the applicants argued that because they did not know that they even had the right to transfer until our 1983 *Alpine I* decision, it would be unjust to impose a requirement on the landowners that they apply for transfers, when they did not know that the law applied to them. *Alpine II*, 878 F.2d at 1223.

Rejecting this claim in *Alpine II* we stated: "Section 8 of the Reclamation Act expressly disclaims any intention of displacing state water law except to insure that landowners receive a water duty consistent with beneficial use. If land-owners disregarded this express congressional directive, they did so at their own risk." *Id.* Here, the Alpine Decree and state law clearly required [14] that the landowners file or attempt to file transfer applications. Indeed, even during the moratorium, the United States indicated that it would "continue to accept the applications and process them up to the point of approval." Although there could be no approvals until the United States was satisfied that the TCID was in compliance, there was an opportunity for the landowners to comply with state law.

## D. All Applications Granting Transfers Must be Remanded

At oral argument, several transfer applicants argued that even if we overruled the blanket intrafarm equitable exemption, the approval of their applications could be upheld on the basis of the Engineer's other findings with respect to their parcels of land. For example, counsel for the Matley–Gomes appellees and counsel for the group of appellees including Rambling

---

**13.** A letter in the record indicates that starting in 1973 the Regional Director for the Department of the Interior imposed a moratorium on the transfer of water rights "in view of the fact that [TCID] did not submit the report showing diversions into and outflows from each division of the District ... as required in the Operating Criteria and Procedures.... We will continue to accept the applications and process them up to the point of approval. There can be no more approvals, however, until the terms of the Court's Judgment and Order are being complied with fully."

**14.** The Alpine Decree provides that "applications for changes in the place of diversion, place of use or manner of use as to Nevada shall be directed to the State Engineer." *See Alpine II*, 878 F.2d at 1221. Nevada Revised Statute section 533.365(1) provides that an interested party may file a protest to a transfer that is before the Engineer.

River, Dieckman, Stix, and Wolf argue that their transfers should be affirmed because there is sufficient evidence in the record to uphold the transfers irrespective of the blanket equitable exemption for intrafarm transfers. We have reviewed the record and conclude that there is insufficient evidence to affirm the district court's judgment with respect to these parcels. Accordingly, we vacate the judgment and remand for further proceedings consistent with this opinion.

For example, the Matley–Gomes appellees allege that the Tribe and the United States failed to meet their burden of proving that the Matley–Gomes applicants forfeited or abandoned the water rights at issue and therefore the transfers should be upheld despite the intrafarm equitable exemption allowed by the Engineer. The Matley–Gomes appellees also argue that because they used water for irrigation on the transferee parcels, they have satisfied the beneficial use requirement. We rejected this argument in *Alpine V*, where applicants also argued that as long as they were putting the water to beneficial use elsewhere on their farm, the use of the water on the actual parcel originally associated with the water right was not required. The landowners in *Alpine V* argued that "intrafarm applicants have the contractual right to use water and have applied the water to beneficial use, albeit in a location different from the original place of use." *Alpine V*, 291 F.3d at 1075.

 Citing *Alpine II*, we explained that the law of forfeiture and abandonment applies to all parcels in the Project—if there was no beneficial use on an individual parcel, the water rights that were originally granted to that parcel could be abandoned or forfeited for lack of use and therefore the water right attached to that parcel could not be transferred. "It is clear that under both federal and state law, a water right is appurtenant to the

land irrigated. Therefore, as a matter of law, it is correct to say that the water rights in question attached to the specific parcel to which water was beneficially applied, rather than the entire property under contract." *Id.* n. 18 (internal citations omitted). If the water was applied at an improper place of use, the forfeiture statute still applies. If we were to hold otherwise, we would in effect be granting an equitable exemption to all transfers within a farm as long as the use was beneficial in some parcel on the farm. This result would directly contradict our prior rulings that all transfers must comply with Nevada state law. *See, e.g., Alpine II*, 878 F.2d at 1222–23.

The Matley–Gomes appellees also invite us to reconsider once again our holding in *Alpine III*, as affirmed in *Orr Ditch* and *Alpine V*, that not all Project water rights were initiated before 1913, the effective date of Nevada's forfeiture law. We decline the invitation, and again re-affirm the reasoning we have repeatedly articulated. "[L]andowners cannot claim 1902 as the date their water rights were initiated, but rather had to demonstrate that they took 'affirmative steps' to appropriate water prior to 1913 to be exempted from the state forfeiture statute." *Alpine V*, 291 F.3d at 1073.

Finally, we reject the Matley–Gomes argument that the Tribe and the United States failed to challenge in district court the State Engineer's specific findings and conclusions on abandonment with respect to the Matley–Gomes applications and therefore are precluded from urging this court to reverse and remand for further proceedings. The Tribe's opening brief in the district court, in addition to addressing the intrafarm transfer exemption, also asked that the State Engineer make individual findings on remand as to whether

the "existing places of use" have not been irrigated.

Although the State Engineer did state in several of his findings that he did not find abandonment, this was in the context of finding abandonment with respect to the transferee parcel, rather than the transferor parcel. This was a logical conclusion under the reasoning that supported the intrafarm exemption; however, as noted, we have rejected this reasoning. Because the State Engineer based his abandonment analysis on the incorrect presumption that the transfer was exempt from the laws of forfeiture and abandonment, his statements about abandonment carry less weight. For example, with respect to the Matley applications, the Engineer stated the following:

> The State Engineer concludes that the water rights requested for transfer under Applications 51137, 51138, and 51139 are intrafarm transfers not subject to the doctrines of forfeiture or abandonment pursuant to Judge McKibben's Order of September 3, 1998, and the applications were filed to correct the records as to where the water was actually being used to irrigate farm property.

Nev. State Eng'r Ruling 4798 at 317–18.

This ruling discussed beneficial use, but only in the context of the intrafarm exemption. It suggests that the use of the water on the transferee parcel would be sufficient to overcome a claim of abandonment as to the transferor parcel. This is not correct under the current state of the law, which does not allow for a blanket special treatment to intrafarm transfers. Furthermore, the State Engineer did not apply the other standards for determining whether abandonment had occurred as set forth in *Alpine V,* including considering evidence that the landowner attempted to apply for a water right transfer. Thus, remand for further factual findings is necessary.

The group of appellees comprising Rambling River Ranches, David Stix, Henry Dieckman, and Howard Wolf raise the same major issues as the other parties. They argue that there is sufficient evidence in the record to defeat the forfeiture and abandonment claims independent of the blanket intrafarm equitable exemption. Appellees raise the same major issues as the other appellees. As to the individual appellees: Rambling River, Stix, Dieckman, and Wolf, they argue that there is sufficient evidence in the record to defeat the forfeiture and abandonment claims independent of the blanket intrafarm equitable exemption.

For Rambling River Ranches, Application No. 50008, the appellees cite portions of the record from hearings before the State Engineer that show a lack of intent to abandon their water rights. They also point to evidence showing that they attempted to file for a transfer of rights but were thwarted by the government or TCID, and contend that they have demonstrated their entitlement to equitable relief. For example, applicant George Frey testified that he notified the TCID that he was going to use the water on a different parcel of land in 1948, the TCID engineer visited his farm, and Frey presumed that the engineer changed the place of use of the water on TCID records. Although this evidence may be persuasive on remand, here we are limited by the State Engineer's express findings. The State Engineer's ruling does not cite any of this evidence, but rather relies on the blanket exemption for intra-farm transfers. "The State Engineer finds that even though Rambling River Ranches has properties that may not be adjacent to each other it was Judge McKibben's intent that those persons moving water within their own properties and not purchasing water rights from some removed third party should have the benefit of his equitable ruling."

Nev. State Eng'r Ruling 4798 at 235. Stix, Dieckman, and Wolf point to similar evidence before the Engineer, about which the Engineer did not make specific findings.

Because the Engineer did not make findings of fact with respect to the Rambling River appellees' evidence, but instead relied on the intrafarm transfer exemption to support his ruling, we must remand to permit the Engineer to make new findings in light of our decision in *Alpine V* Under *Alpine V*, 291 F.3d at 1077, to determine whether an applicant had the intent to abandon the water right at issue, on remand the District Court or the State Engineer must assess the circumstances as a whole and at a minimum make the following findings: (1) that the applicant made continuous use of the water right, and (2) that the applicant attempted unsuccessfully to file for a change in place of use, or inquired about the possibility of a transfer.

*Appeals by Applicants Winder and Norman*

We affirm the district court's judgment to the extent that it upheld the State Engineer's rulings denying the transfer applications of the following landowners: Isabelle Winder (Application 49111, parcel 1) and Darrell and Patricia Norman (Application 49285, parcel 1). On appeal, these applicants argue that they could not have applied for a transfer while the moratorium was in effect and that they have been unfairly penalized. As noted above, this argument is foreclosed by our decision in *Alpine II*.

We also reject Isabelle E. Winder's appeal of the denial of her transfer application 49111. The district court upheld the

State Engineer's findings that Winder had abandoned the water rights at issue and the State Engineer's ruling excluding documentary evidence that showed that the proposed transfer was actually an intrafarm transfer. Evidence in the record established that water had not been used on the land for 22 years and that the use of the land was inconsistent with irrigated agriculture. Nev. State Eng'r Ruling 4798 at 103. Winder's claim that the Engineer erred in rejecting her documentary evidence is moot after *Alpine V*—the fact that the transfer was an intrafarm transfer no longer permits a blanket exemption from the application of forfeiture and abandonment law. There is substantial evidence to uphold the Engineer's determination that Winder abandoned the water rights at issue.

Finally, we also affirm the district court's judgment upholding the Engineer's denial of Darrell W. and Patricia A. Norman's transfer application 49285 [15] on the basis of abandonment. The State Engineer found that no water had been applied to the parcel for at least seven years and that it was occupied by a church and an adjacent dirt parking lot. Nev. State Eng'r Ruling No. 4798 at 169. These are improvements inconsistent with irrigation, and there was substantial evidence to support the Engineer's determination that the Applicants failed to show a lack of intent to abandon the water right.[16]

## E. The Clear and Convincing Evidentiary Standard

Clear and convincing evidence is required to prove that a water right has been forfeited or abandoned. *See Town of*

---

**15.** The notice of appeal by the Normans also included Ted Smitten, Jr., who has elected to withdraw his appeal.

**16.** Norman notes that the Engineer described the use of the land as inconsistent with agri-

culture during the moratorium for granting transfer applications. However, the fact that this use of the land occurred during the moratorium does not require a different conclusion, for the reasons stated above.

*Eureka v. Office of State Eng'r*, 108 Nev. 163, 169, 826 P.2d 948, 952 (1992). (Stating that "[b]ecause the law disfavors a forfeiture, the State bears the burden of proving, by clear and convincing evidence, a statutory period of non-use."). Clear and convincing evidence is that "beyond a mere preponderance of the evidence." *Orr Ditch*, 256 F.3d at 947 (citing *Albert H. Wohlers & Co. v. Bartgis*, 114 Nev. 1249, 969 P.2d 949, 957 n. 4 (1998)). The Tribe alleges that the State Engineer failed to properly apply the clear and convincing evidentiary standard in findings regarding non-use of water in six of the applications addressed in Ruling on Remand No. 4798 and four of the seven applications addressed in Ruling on Remand No. 4825. In these rulings, the Engineer rejected the Tribe's evidence showing that certain water rights had not been exercised for substantial periods and that those rights had been forfeited or abandoned.

The Tribe alleges that the State Engineer's rulings on four of the applications in Ruling on Remand No. 4825 (for all seven applications in Ruling on Remand No. 4825, the State Engineer's approval of the proposed transfer was in part based on the intrafarm exemption) incorrectly applied the clear and convincing evidentiary standard of proof. This argument relies in part on our decision in *Orr Ditch*, in which we stated that "[d]espite the limitations imposed by the current state of the record, it may be appropriate for us to comment on what we do have before us. We are concerned that the Engineer may have misunderstood the 'clear and convincing evidence' standard necessary to establish forfeiture.... He appears to have demanded proof beyond a reasonable doubt, and perhaps even more than that." *See Orr Ditch*, 256 F.3d at 947.

In *Orr Ditch*, however, we rested our holding in part on the fact that the Engineer's ruling did not refer to any contrary evidence. *Orr Ditch*, 256 F.3d at 947. By contrast, for all of the findings to which the Tribe objects, the State Engineer cites contrary evidence, usually testimony from the applicant.

Although the Tribe refers to *Orr Ditch* to assert that the Engineer's rejection of their protests can only be explained by the Engineer's failure to apply the clear and convincing standard of proof, the Tribe's argument in fact appears to be directed at the State Engineer's failure to make adequate findings with respect to each parcel of land in each application. The Tribe alleges that "the same pattern of rejecting the Tribe's claims of forfeiture and abandonment based on findings that the Tribe's evidence of non-use of water was not sufficient to meet the clear and convincing standard of proof is repeated," without specifying which evidence was considered improperly with respect to each application.

 Recalling that the State Engineer's decisions are prima facie correct, and that we uphold the Engineer's factual findings if supported by substantial evidence and his legal conclusions if not contrary to law, *see Alpine V*, 291 F.3d at 1071, we conclude that the State Engineer's findings on the photographic evidence were supported by substantial evidence and that he correctly applied the clear and convincing standard of proof.

The comparison with the evidence in *Orr Ditch*, which included aerial photographs similar to the ones used by the Tribe in this case, also suggests that the Tribe may be concerned with the Engineer's treatment of its photographic evidence when he made his evidentiary rulings. As a preliminary matter, in his General Finding of Facts, the Engineer discounted the aerial photographs used by the Tribe's witnesses for making land use determinations on the existing place of use from 1948 through

the date of filing the applications. The State Engineer explained that the photographs fail to "sufficiently demonstrate[ ] to the satisfaction of the State Engineer to be accurate, and that the scale of many of the photographs is far too small for making land use determinations as critical as those being made here." Nev. State Eng'r Ruling No. 4798 at 30–31. Thus, as the Engineer further explained, these photographs will be "given weight which recognizes the possibility of a fairly significant margin of error. Therefore, the State Engineer finds that the greatest weight as to land use determinations will be given to those descriptions provided by the applicants at the original administrative hearings." *Id.* at 31.

The Engineer provided substantive reasons for this determination—some of the areas in dispute apparently amount to the size of a "mechanical pencil point" on the photos, making it impossible for the Engineer to determine how the water was used on the land. The Engineer acknowledged that some of the photographs are of higher quality—especially the 1948 and 1977 photographs, which use a better scale—yet he stated that he would give minimal weight to all of the aerial photos in his assessment of the applications and as a general rule would accept the applicant's testimony as worthy of greater evidentiary weight. In many applications, these aerial photos provide the Tribe's only evidence of non-use.

Although this presumptive blanket determination giving greater weight to the applicants' testimony over photographs submitted by the Tribe could be interpreted as failing to make the necessary individualized findings with respect to each parcel, in most of his individual rulings on the applications, the Engineer did make specific findings regarding the quality of the photos in the case before him, and explicitly balanced the quality of this evidence with the evidence presented by the appli-

cants. Furthermore, due to our deferential standard of review of the Engineer's findings, we conclude that the Engineer's blanket determination downgrading the relative weight of the photographic evidence was supported by sufficient justification and substantial evidence.

### F. Dirt–Lined Ditches

In his General Finding of Fact XI in Ruling No. 4798, the State Engineer found that "if a dirt-lined supply ditch is within the irrigable area of an existing place of use, water was beneficially used on the parcel of land covered by the dirt-lined ditch. Dirt-lined ditches within a farm were not excluded from the irrigable area under the Reclamation Service regulations and it is the State Engineer's understanding that the Bureau of Reclamation required these areas to be water righted." Nev. State Eng'r Ruling 4798 at 37. The United States and the Tribe reject this finding, asserting that the Engineer erred as a matter of law in concluding that parcels used in this manner have appurtenant water rights to transfer.

### 1. TCID Exhibit Y: Regulations for Determination of Irrigable Areas

The State Engineer partially based his conclusion on a document submitted by the applicants entitled "U.S. Reclamation Service, General Regulations for the Determination of Irrigable Areas." The Tribe and the United States note that the document is not dated and does not contain a signature. There is thus nothing on the document to suggest that these regulations applied to the Project or that they were in effect at a time relevant to these consolidated cases. However, in a hearing before the State Engineer, Doris Morin, Secretary–Treasurer for TCID, testified that the Reclamation Service (the precursor to the Bureau of Reclamation) relied on these

regulations in the early years of the Project to determine the irrigable areas on individual Project farms.

The Engineer interpreted the following section of the letter as establishing that dirt-lined ditches were to be included within the "irrigable area" entitled to receive Project water: "The irrigable area shall be determined by deducting from the total area, railroad, canal, lateral, drain and waste ditch rights of way, and non-irrigable lands, that are to be deducted as hereinafter specified. . . ." The State Engineer concluded that the fact that dirt-lined ditches were not included in this list meant that they were to be considered a part of the irrigable land.

However, even if we accept that dirt-lined ditches were intended to be a part of the irrigable land, the ultimate conclusion that these ditches therefore impart a transferable right on the land surrounding them does not follow. Therefore, we reverse the Engineer's conclusions with respect to the impact of this letter and his conclusions with respect to dirt-lined ditches generally.

## 2. Irrigable Areas, Water Rights, Abandonment, and Forfeiture

After concluding that dirt-lined ditches are a part of an irrigable area, the Engineer stated that it was his understanding that "the Bureau of Reclamation required these areas to be water-righted." Nev. State Eng'r Ruling 4798 at 37. In other words, because the Engineer understood that dirt-lined ditches were not excluded from irrigable acreage under BOR regulations, he presumed that the parcels covered by dirt-lined ditches must have had water rights subject to transfer. However, this presumption constitutes an error of law, and we therefore reverse the district court's judgment to the extent that it upholds the Engineer's blanket rulings on dirt-lined ditches.

The initial designation of an area as an "irrigable area" on farms within the Project is relevant to determining the extent of existing water rights subject to transfer. Individual farms obtained rights to water from the Project through written contracts or agreements with the Reclamation Service. The contract granted rights to use water on a certain number of "irrigable acres" on each farm which amounted to an area less than the total number of acres on the farm. Nev. State Eng'r Ruling 4798 at 21–24. The TCID developed color-coded maps to identify the irrigable and non-irrigable areas defining the outer limit of lands with appurtenant water rights subject to transfer.

 However, not all water-righted parcels within an irrigable area are subject to transfer. A water right appurtenant to a parcel cannot be perfected and therefore subject to transfer unless it was put to beneficial use. *See Nev.Rev.Stat.* § 533.035 ("Beneficial use shall be the basis, the measure and the limit of the right to the use of water."). If the right was not perfected, the water right in an irrigable area is subject to abandonment and forfeiture as set forth in the Nevada laws that we have consistently held apply to all land within the Project. *See, e.g., Alpine III,* 983 F.2d at 1494; *Alpine II,* 878 F.2d at 1222–23 (applying § 8 of the Reclamation Act to conclude that Nevada law has governed transfers within the project since 1902).

Irrigation is a "beneficial use," under Section 8 of the Reclamation Act, because the right to use the water attaches to the land that is irrigated, not the land through which the water passes: "[t]he right to the use of water acquired under the provisions of this Act shall be appurtenant to the land irrigated, and beneficial use shall be the basis, the measure, and the limit of the

right." Section 8 of the Reclamation Act of 1902, codified in part at 43 U.S.C. § 372.

 Water can be used beneficially for the purposes of irrigation when it is applied to a tract of land to produce crops. *See Alpine I,* 697 F.2d at 854. Water rights do not, however, attach to all parcels that line the length of the ditch. This is exemplified by the practice of granting an overall water right or "water duty" that includes a greater amount of water than can be beneficially applied because of the water loss from the point of diversion to the place of use. *See, e.g., Doherty v. Pratt,* 34 Nev. 343, 348, 124 P. 574, 576 (Nev.1912) (observing that nature of land through which water is conveyed "must ... be taken into consideration in determining the amount of water to which an appropriator is entitled"). The fact that the loss due to the inefficiencies inherent in the transportation of water in a ditch is accounted for in the grant of water rights indicates that for purposes of determining what part of the parcel gains appurtenant water rights, the actual transportation of water does not create rights in the land along the entire course of the ditch.

Thus, the Engineer's blanket conclusion that "if a dirt-lined supply ditch is within the irrigable area of an existing place of use, water was beneficially used on the parcel of land covered by the dirt-lined ditch" was erroneous. There is a possibility that along the course of a ditch, there may be some beneficial use and appurtenant rights if the water is used for lateral root irrigation; however, there was no evidence in any of the proceedings before the Engineer to this effect. Therefore, we reverse the district court's ruling upholding the State Engineer's finding with respect to dirt-lined ditches and order on remand individual findings as to the beneficial use of the water as it relates to all parcels claiming an appurtenant right due

to the transfer of the water through a dirt-lined ditch.

## III. Conclusion

In sum, we affirm in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion. We remand with respect to all transfer applications that were granted by the State Engineer and upheld by the district court on appeal for further proceedings consistent with this opinion. We affirm the Engineer's findings with respect to the contract dates for the initiation of water rights. To the extent that the Engineer determined that the contract date was before 1913, the effective date of Nevada's forfeiture statute, we affirm the Engineer's findings that the parcel was not forfeited. With respect to contract dates after 1913, on remand the district court or the State Engineer shall determine whether the Tribe has shown non-use by clear and convincing evidence and, if so, whether the applicant took steps to transfer rights during the period of non-use, but was thwarted by the government or by TCID in his or her efforts.

When determining whether the applicant abandoned his or her water rights, on remand the district court or the State Engineer must determine if the applicant made continuous use of the water right and attempted unsuccessfully to file for a change in the place of use, or at least inquired about the possibility of a transfer and was told by the government or TCID that such a transfer was not permitted. We affirm the district court's judgment to the extent that it upheld the Engineer's rulings denying transfer applications. Finally, we reverse the district court's ruling to the extent that it upheld the State Engineer's determination that the use of land for on-farm, dirt-lined supply ditches es-

tablished the beneficial use of irrigation water on the land covered by the ditches.

All parties to bear their own costs on appeal.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.